UNITED GAS PIPE LINE COMPANY,
Plaintiff-Appellant,

v.

Arvis E. WHITMAN, Sheriff and Ex-Officio Tax Collector, Bienville Parish, Louisiana, Defendant-Appellee.

No. 78–2089.

United States Court of Appeals,
Fifth Circuit.

May 21, 1979.

Malcolm S. Murchison, Ray A. Barlow, Michael R. Mangham, Shreveport, La., for plaintiff-appellant.

Whitten & Blake, Leon H. Whitten, Jonesboro, La., Neil H. Mixon, Jr., D. Irvin Couvillion, Baton Rouge, La., for defendant-appellee.

Before THORNBERRY, CLARK and RUBIN, Circuit Judges.

CHARLES CLARK, Circuit Judge:

The issue on this appeal is whether a federal district court has jurisdiction to hear a suit for the refund of state taxes when a state statute provides that tax refund actions may be maintained in either state or federal courts. We hold that the Tax Injunction Act of 1937, 28 U.S.C. § 1341, bars district court jurisdiction over state refund suits, and that the bar applies

even though the state itself has consented to the maintenance of refund suits in a federal forum.

## I.

The appellant, United Gas Pipe Line Company ("United"), is an interstate pipeline company that stores some of its natural gas from Texas and the Gulf of Mexico in underground formations located within Louisiana. The gas is stored in Louisiana while awaiting transportation to out-of-state destinations. United paid, under protest, ad valorem taxes on the stored natural gas to the Sheriff of Bienville Parish, Louisiana, the ex-officio tax collector for the parish. United then brought this action for a refund of the ad valorem taxes, claiming that their imposition was an impermissible burden on interstate commerce. On the same day that United filed its suit in the federal district court, United commenced a refund action in the Second Judicial District Court for the Parish of Bienville, Louisiana, raising the same commerce clause objection to the ad valorem taxes. But for the difference in forum, the state and federal actions were identical. At the time of this appeal the state suit was still pending. The federal district court held that it had jurisdiction to hear the suit, but it dismissed the action on grounds of abstention.[1]

The Tax Injunction Act of 1937, 28 U.S.C. § 1341, states:

> The district courts shall not enjoin, suspend or restrain the assessment, levy, or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.[2]

A Louisiana statute, however, provides that tax refund suits may be brought in state courts "or in the federal courts in any case where jurisdiction is vested in any of the courts of the United States." La.Rev.Stat. Ann. § 47:2110.

United asserts that a tax refund suit does not "enjoin, suspend or restrain the assessment, levy or collection" of any state tax and thus does not fall within the bar of section 1341. United further argues that even if a refund suit does come within the interdiction of section 1341, the Louisiana statute which authorizes refund suits in federal court is a waiver by Louisiana of section 1341's protection against federal interference of state tax affairs, thus lifting whatever jurisdictional bar would otherwise exist. We disagree with both of United's contentions and hold that the district court did not have jurisdiction over United's refund action.

## II.

■ The policies embodied in section 1341, our own past precedent construing the statute, and the practical effect of a tax refund suit on state tax administration all require that we hold that tax refund suits fall within the statute's prohibition.

## A.

The starting point for analysis of the scope of section 1341 is the recognition that the statute transformed what had previously been a judicially devised rule of restraint into a congressionally imposed limitation on jurisdiction. The Supreme Court has characterized the statute as a "broad jurisdictional barrier" in which "Congress gave ex-

---

1. The decision to abstain and dismiss the action essentially was based on the same reasons that we hold United's actions barred by section 1341. The court felt compelled, however, to place its holding on abstention rather than jurisdictional grounds because of its interpretation of *Mississippi River Fuel Corporation v. Cocreham,* 382 F.2d 929 (5th Cir. 1967), and *Shell Oil Company v. Mouton,* 410 F.2d 715 (5th Cir. 1969). As we explain in part II(B) of this opinion, *Mississippi River Fuel* and *Shell Oil* should not be read to decide the jurisdictional

issue *sub silentio.* Since we hold that United's suit is jurisdictionally barred, we need not reach any of the abstention issues discussed by the district court in order to affirm its judgment dismissing the suit.

2. The current wording of section 1341, quoted above, is a slightly revised 1948 version of the original 1937 statute, changed to reflect the more streamlined terminology of the Federal Rules of Civil Procedure. *See* 28 U.S.C.A. § 1341 (Reviser's Note).

plicit sanction to the pre-existing federal equity practice." *Moe v. Confederated Salish & Kootenai Tribes,* 425 U.S. 463 at 470, 96 S.Ct. 1634 at 1640, 48 L.Ed.2d 96. *See also Tully v. Griffin, Inc.,* 429 U.S. 68, 73, 97 S.Ct. 219, 222, 50 L.Ed.2d 227 (1976). The leading case on section 1341 in this circuit, *Bland v. McHann,* 463 F.2d 21 (5th Cir. 1972), *cert. denied,* 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973), described the statute as "an explicit congressional limitation on the jurisdiction of the federal courts," a limitation in which "Congress recognized and gave sanction to the judicial practice" existing prior to the statute's enactment. 463 F.2d at 24, 26.

Since the 1937 statute was intended as a codification of judicial practice prior to its passage, both the Supreme Court and this court have found it useful to draw on the background of pre–1937 decisions in interpreting the purposes and policies which underlie it. *See, e. g., Tully v. Griffin, supra,* 429 U.S. at 73, 97 S.Ct. at 222; *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 297–299, 63 S.Ct. 1070, 1072–1073, 87 L.Ed. 1407 (1943); *Bland v. McHann, supra,* 463 F.2d at 26–27. Two pre-enactment cases are of particular importance in determining whether tax refund suits should be regarded as within the jurisdictional bar of section 1341, *First National Bank v. Board of County Commissioners,* 264 U.S. 450, 44 S.Ct. 385, 68 L.Ed. 784 (1929), and *Matthews v. Rodgers,* 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447 (1932).

*First National Bank* involved an action brought in federal court for the recovery of certain state taxes on the grounds that they were collected in violation of the due process and equal protection clauses. The Supreme Court held that the federal suit was barred because the taxpayers had not pursued state administrative remedies. In *Bland* we stated that *First National Bank*

"alone would seem to effectively preclude the action here for a refund if the state remedy is adequate." 463 F.2d at 26.

*Matthews v. Rodgers,* also discussed in *Bland,* involved a Mississippi tax of one hundred dollars payable in advance "by 'every individual . . . engaged in the business of buying or selling cotton for himself.'" 284 U.S. at 523, 52 S.Ct. at 218. The complainants alleged that the tax was an unconstitutional burden on interstate commerce, and they sought an injunction from a three-judge district court against state officials to prevent collection of the tax. The Supreme Court held that "If the remedy at law is plain, adequate, and complete, the aggrieved party is left to that remedy in state courts, from which the cause may be brought to this Court for review if any federal question be involved." *Id.* at 526, 52 S.Ct. at 220. The Court then analyzed what has ever since been the central focus of suits brought in federal courts involving state taxation—the adequacy of the state remedy:

[The complainants] may pay the tax to the collecting officer under protest, and, under the laws of Mississippi, may maintain a suit at law for its recovery on the ground that it was exacted in violation of the Constitution of the United States. That such a procedure saves to the taxpayer his federal right, and if available, will defeat the jurisdiction of federal courts to enjoin the collection of the tax, has long been the settled rule of this Court.[3]

*Id.* at 526, 52 S.Ct. at 220.

The primary significance of *Rodgers,* however, is that it was not grounded simply in the traditional rule that equitable remedies are not available when adequate remedies exist at law, but rather in the far broader concept of federalism that states should be free from federal interference in

---

**3.** The Court cited many cases to support the "settled rule." *E. g., Henrietta Mills v. Rutherford County, North Carolina,* 281 U.S. 121, 50 S.Ct. 270, 74 L.Ed. 737 (1930); *Atchison, Topeka & Santa Fe Ry. v. O'Connor,* 223 U.S. 280, 32 S.Ct. 216, 56 L.Ed. 436 (1912); *Indiana Manufacturing Co. v. Koehne,* 188 U.S. 681, 23 S.Ct. 452, 47 L.Ed. 651 (1930); *Arkansas Building & Loan Ass'n v. Madden,* 175 U.S. 269, 20 S.Ct. 119, 44 L.Ed. 159 (1899); *Shelton v. Platt,* 139 U.S. 591, 11 S.Ct. 646, 35 L.Ed. 273 (1891). We note also that the "plain, adequate and complete remedy" provided in State courts was a suit for refund.

the administration of their own fiscal affairs. The Court articulated this policy of non-interference as a "scrupulous regard for the rightful independence of state governments." *Id.* at 525, 52 S.Ct. at 219. In *Bland* we recognized that this "scrupulous regard" for state autonomy was an independent rationale in *Rodgers,* separate from simple notions of equitable restraint. 463 F.2d at 26.

The first significant decision after enactment of the statute was *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 63 S.Ct. 1070, 1073, 87 L.Ed. 1407 (1943). *Great Lakes* perpetuated the policies of restraint exemplified by *First National Bank* and *Rodgers* when it applied that restraint in a suit for declaratory judgment, a context outside of the traditional equitable rules governing injunctions, and by relying heavily on the special concerns of federalism in the area of state tax administration. *See Bland, supra,* 463 F.2d at 26–27 and n.21. "Interference with state internal economy and administration," the Court stated, "is inseparable from assaults in the federal courts on the validity of state taxation." 319 U.S. at 298, 63 S.Ct. at 1073. We summarized the *Great Lakes* holding in *Bland* by stating that "where the state remedy is plain, adequate and complete it is the duty of federal courts to withhold declaratory relief, and to remit the taxpayers to the state courts with ultimate review in the Supreme Court." 463 F.2d at 26. Prior to *Bland,* we held in *City of Houston v. Standard-Triumph Motor Company,* 347 F.2d 194 (5th Cir. 1965), that, although *Great Lakes* itself did not explicitly rule that declaratory judgment actions were jurisdictionally barred by section 1341, we construed the statute as including declaratory judgment actions among its jurisdictional prohibitions. 347 F.2d at 201.

The concept that section 1341 is not a narrow statute aimed only at injunctive interference with tax collection, but is rather a broad restriction on federal jurisdiction in suits that impede state tax administration, has continued to gain credence in the federal courts. The Supreme Court recently stated that "[t]he statute has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." *Tully v. Griffin, Inc., supra,* 429 U.S. at 73, 97 S.Ct. at 222. In *Moe v. Confederated Salish & Kootenai Tribes, supra,* the Court repeated its admonition that "interference with a State's internal economy is inseparable from a federal action to restrain taxation." 425 U.S. at 470, 96 S.Ct. at 1634. This court has stated that "[t]he reluctance of the federal courts to inject themselves into state or local tax affairs is an oft-repeated theme in the case law of this Circuit." *Alnoa G. Corporation v. City of Houston,* 563 F.2d 769, 771–72 (5th Cir. 1977). In short, the history of section 1341, from its precursor federal equity practice to its most current judicial construction, evidences that it is meant to be a broad jurisdictional impediment to federal court interference with the administration of state tax systems.

## B.

United would have suits for tax refund exempted from the broad jurisdictional barrier of section 1341 on the grounds that refund suits do not restrain the actual collection of any tax and involve relatively minimal interference with state tax administration. United's contentions are foreclosed by *Bland,* and do not stand up to practical scrutiny.

In *Bland* we considered and rejected the argument that the reach of section 1341 could be determined by "focusing solely on the language of the statute." 463 F.2d at 25. *See also City of Houston v. Standard-Triumph Motor Company, supra,* 347 F.2d at 198–199. Instead, *Bland* undertook a careful review of the history of federal non-interference with state taxation and concluded that a suit for tax refund is an integral part of a state's tax administration system in which federal courts should not intervene:

An action for a refund is an integral part of state tax administration. We see no reason to bifurcate the state remedy.

Section 1341 compels the taxpayers to seek anticipatory relief through a plain, speedy and efficient state remedy. An ancillary claim for a refund should properly be joined with it.

Thus, based upon all of the foregoing we conclude that it is the duty of federal courts, in actions for the refund of state taxes, to defer to state administrative and judicial remedies where the state remedy is "plain, speedy and efficient." *Id.* at 27. In *United States v. State Tax Commission of Mississippi,* 505 F.2d 633 (5th Cir. 1974), we referred to *Bland* with the statement that section 1341 "applies to suits for refunds." 505 F.2d at 638. The Ninth Circuit, relying on *Bland,* has also held that tax refund suits are barred by section 1341. *Kelly v. Springett,* 527 F.2d 1090, 1094 (9th Cir. 1975). *See also Advertiser Company v. Wallace,* 446 F.Supp. 677, 679 (M.D.Ala. 1978);[4] Wright, Miller & Cooper, 17 Federal Practice and Procedure § 4337 at 425.[5]

United's efforts to distinguish *Bland* are unpersuasive. United contends that since the complaint in *Bland* sought both injunctive and refund relief, the decision is not controlling in cases such as this one, where only refund relief is sought. United's distinction, however, does not account for the specific statement in *Bland* that refund suits are barred because they interfere with state tax administration. That interference is not heightened because the plaintiffs attach a prayer for injunctive relief that is patently outside the power of the federal court to provide. *Bland* rests on the principle that the judicial interpretation and en-forcement of state tax law should rest with the state courts alone, and that a suit for refund is as much an interference with that function as a suit for declaratory or injunctive relief. *Bland* held that Mississippi's scheme for securing judicial relief, which included a provision for refund suits, was a plain, speedy and efficient remedy which ought not be bifurcated into constituent parts by the federal courts. As was correctly stated in *Advertiser Co. v. Wallace, supra,* "Section 1341 precludes actions for refunds even if anticipatory relief is not sought." 446 F.Supp. at 679; *see also Kelly v. Springett, supra,* 527 F.2d at 1093–1094.

■ United's reliance on two decisions prior to *Bland* is also misplaced. In *Mississippi River Fuel Corporation v. Cocreham,* 382 F.2d 929 (5th Cir. 1967), and *Shell Oil Company v. Mouton,* 410 F.2d 715 (5th Cir. 1969), this court affirmed decisions on the merits in Louisiana tax refund suits without invoking section 1341's jurisdictional bar. Those two decisions must be considered of limited precedential importance, however, because in neither opinion was the problem of section 1341 as a limitation on federal jurisdiction discussed. *Shell Oil* did not mention section 1341 at all. *Mississippi River Fuel* did cite section 1341 in a footnote, but that citation was merely part of a long discussion interpreting whether as a matter of state law, Louisiana had consented to suit in a federal forum. 382 F.2d at 934, n.9. The court cited the statute to make the point that Louisiana's authorization for refund suits was designed to avoid

---

4. The court in *Advertiser Company* interpreted *Bland* and *Kelly v. Springett* to hold that refund suits are absolutely barred by section 1341 if the state remedy is adequate. 446 F.Supp. at 679. Another district court has interpreted *Bland* as based on principles of discretionary abstention, rather than jurisdiction. *Kistner v. Milliken,* 432 F.Supp. 1001 (E.D.Mich.1977). Prior to the *Bland* and *Kelly* decisions, several district courts had held refund suits outside the purview of section 1341. *E. g., Southland Mall, Inc. v. Garner,* 293 F.Supp. 1370 (W.D.Tenn. 1968); *Rico Argentine Mining Co. v. Board of County Commissioners,* 215 F.Supp. 208 (D.Colo.1963); *Central Steel & Wire Co. v. City of Detroit,* 101 F.Supp. 470 (E.D.Mich.1951).

5. The Wright, Miller and Cooper treatise states:

The statute by its terms prohibits only an action to "enjoin, suspend or restrain" a state tax. This has led some district courts, though without much discussion, to hold that a federal court may entertain a suit for a refund, since this is only a suit for a money judgment. The better view, however, *is that an action for refund is an integral part of state tax administration and there is no reason to bifurcate the state remedy. On this reasoning it is held that § 1341 applies to refund actions.*

17 Federal Practice and Procedure § 4237 at 425.

the threat of federal injunctive interference that might otherwise be posed by the statute. The holding in *Mississippi River Fuel* was that changes made in the Louisiana State Constitution did not repeal the Louisiana statute providing for the maintenance of refund suits in federal courts. That holding, which went to the consent of the state to suit, was an entirely different matter from the issue of congressional restriction on jurisdiction. *E. g., City of Houston, supra,* 347 F.2d at 197–99.[6] It is true that *Mississippi River Fuel* and *Shell Oil* did allow, *sub silentio,* what *Bland* later forbad. Since, however, those cases did not discuss the jurisdictional bar of section 1341, the precedential effect of the fact that jurisdiction was exercised must give way to the thoroughly reasoned holding on section 1341 in *Bland.*[7]

## C.

When the practical effects of a state refund suit are considered, *Bland's* holding that they impermissibly interfere with state tax administration becomes compelling. Although the tax collector does actually collect taxes from the taxpayer when they are paid under protest, Louisiana law effectively denies the state the use of the tax monies until the refund suit is finally resolved. The statute provides that upon receipt of a notice of protest, the amount paid to the collecting officer "shall be segregated and held by the officer for a period of thirty days." La.Rev.Stat.Ann. § 47:2110. The statute further provides:

> If suit be filed within such time for the recovery of the tax, such amount so segregated shall be further held pending the outcome of the suit. If the taxpayer prevails, the officer shall refund the amount to the taxpayer with interest at the rate of two per centum (2%) per annum for the period from the date such funds were received by the officer to the date of such refund.

An injunction against levy or collection could not be more intrusive on the domain of a state's tax administration than a suspension of the state's right to spend the tax funds it collects.[8] A tax refund suit in Louisiana, however, has precisely that effect, placing tax funds in escrow pending judicial resolution of the taxpayer's protest. The central thrust of section 1341 is that if

---

**6.** As we discuss in part III of this opinion, *City of Houston* held that section 1341 is a restraint on the court itself, not merely on the parties, and the parties by their consent may not subvert the statute's jurisdictional bar. 347 F.2d at 197–201.

**7.** United also cites a statement made by way of dictum in *Moe v. Confederated Salish & Kootenai Tribes, supra.* In a footnote in *Moe,* the Supreme Court stated:

> Any further proceedings with respect to refund claims by or on behalf of individual Indians, *see* n.7, *supra* would not appear to implicate § 1341.

425 U.S. at 475 n.14, 96 S.Ct. 1642 n.14. When this dictum is read in context, it can be seen to be irrelevant to the question before us here. *Moe* held that an action by an Indian tribe suing as a Tribe to resist state taxes was not barred from the federal forum under section 1341, because of a special jurisdictional statute for Indian Tribes, 28 U.S.C. § 1362. In addition to the Tribe's suit in *Moe,* certain individual Indians sought refunds. The district court held the individual claims in abeyance pending the Supreme Court's resolution on the jurisdictional issues and on the merits as to the Tribe. Two references were made by the Supreme Court to the remaining individual refund claims. Footnote 7 states that the Court expressed no view as to the standing of individual Indians, and also noted that if they do have standing, "their claims must be properly grounded jurisdictionally." Footnote 14 quoted above is the second reference. The Court noted that section 1362, which it relied on to override section 1341 as to the Tribe, is only applicable to an "Indian tribe or band." Having made this holding, the Court then pointed out that it need not reach the jurisdictional issues as to individual refund claims, "since all of the substantive issues raised on appeal can be reached by deciding the claims of the Tribe alone, which did bring this action in the District Court under § 1362." Only after having decided the issues before it did the Court add its observation that § 1341 did not appear to be implicated.

Footnotes 14 and 7 of *Moe* may involve a special relationship between section 1341 and section 1362. At any rate, they are obiter dicta.

**8.** "[T]axes are the lifeblood of government, and their prompt and certain availability an imperious need." *Bull v. United States,* 295 U.S. 247, 259, 55 S.Ct. 695, 699, 79 L.Ed. 1421 (1935).

the fiscal machinery of a state government is to be jammed by the interdiction of a court denying a state its tax revenues, that interdiction ought properly come only from the courts of the state itself. The maintenance of tax refund suits in federal courts runs full force against that statutory purpose.[9]

Even if the Louisiana provision for the segregation of taxes paid under protest did not exist, tax refund suits in federal court would be impermissibly disruptive of a state's tax system. If tax refund suits were not barred by section 1341, they would be maintainable in federal courts anytime a federal question was involved in the dispute or anytime the plaintiff was a nonresident able to invoke diversity jurisdiction. We have previously noted that one of the legislative purposes in enacting section 1341 was the elimination of disruption in state and local financing by out-of-state corporations bringing suit in federal court. *Hargrave v. McKinney,* 413 F.2d 320, 325–26 (5th Cir. 1969). In *City of Houston, supra,* we applied that rationale in the closely analogous context of declaratory judgments:

> Despite the judge-made equitable principles which restricted federal equitable relief and thus ameliorated the likelihood of state-federal clashes, Congress was of the view that these actions were both too disturbing to federal-state relations and worked an obvious discrimination as between small, local taxpayers and larger

ones who could satisfy the dollar limitations on the amount in controversy for suits grounded on the laws or Constitution of the United States as well as diversity, likewise often a favorable advantage of corporate taxpayers.

347 F.2d at 201. The *City of Houston* decision is relevant because it, like *Bland,* took a practical approach to the question of whether declaratory judgments come within the bar of section 1341, holding that they do. If anything, a refund suit has a stronger claim to inclusion within the statute than a declaratory judgment action since a refund suit, aside from deciding the tax liability of a particular taxpayer, may result in the tie-up of state revenues in states with laws similar to Louisiana. Even in states without a specific provision in their laws for prejudgment set-asides in refund suits, such suits would cast a cloud on the state's right to put the tax funds involved into its general budget.

Although a federal court's determination of the taxpayer's liability would technically bind only the immediate parties and be limited to the tax years in question, its effect as a matter of stare decisis would control state collection efforts. Taxpayers in situations similar to the case actually litigated would be moved to also pay their taxes under protest. Once a particular section of a state tax code is declared invalid or narrowly construed by a court in a refund suit, collecting officials would doubt-

---

**9.** One of the most thorough explications of the purposes underlying federal non-intervention in state tax affairs was made by Justice Brennan in *Perez v. Ledesma,* 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971) (Brennan, J., concurring in part and dissenting in part). We quoted from Justice Brennan's opinion in *Bland,* 463 F.2d at 26 n.21:

> The special reasons justifying the policy of federal non-intervention with state tax collection are obvious. The procedures for mass assessment and collection of state taxes and for administration and adjudication of taxpayers' disputes with tax officials are generally complex and necessarily designed to operate according to established rules. State tax agencies are organized to discharge their responsibilities in accordance with the state procedures. If federal declaratory relief were available to test state tax assessments, state

tax administrators might be thrown into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law. During the pendency of the federal suit the collection of revenue under the challenged law might be obstructed, with consequent damage to the State's budget, and perhaps a shift to the State of the risk of taxpayer insolvency. Moreover, federal constitutional issues are likely to turn on questions of state tax law, which, like issues of state regulatory law, are more properly heard in the state courts. *See generally,* S.Rep.No. 1035, 75th Cong., 1st Sess. (1937). These considerations make clear that the underlying policy of the anti-tax-injunction statute, 28 U.S.C. § 1341, relied on in Great Lakes, bars all anticipatory federal adjudication in this field, not merely federal injunctions.

less stop asserting rights to taxes under that section, as surely as if collection under it had been formally enjoined.

Refund suits may involve amounts of money both paltry and large. They may call for interpretations of tax law both arcane and far-reaching. There is no way to predict how any particular refund litigation might ultimately affect a state's tax system, but the threat exists that any such litigation could put substantial portions of a state's revenue or broadly applicable sections of a state's tax code in jeopardy. The policy of section 1341 is that such judicial threats should come only from state courts when the state provides taxpayers a remedy that is plain, speedy and efficient. Review of such state court decisions in the United States Supreme Court remains available to preserve whatever substantial federal rights may be implicated. That policy would be severely frustrated by opening jurisdiction to the district courts to hear refund suit challenges to the validity of state taxes.

In sum, we hold that section 1341 is a jurisdictional prohibition on the maintenance of tax refund suits in federal courts, whenever a state remedy that is plain, speedy and efficient is available.

### III.

United argues that even if tax refund suits are normally within the bar of section 1341, the bar is lifted by the express provision in the Louisiana tax code which authorizes refund suits in federal forums. La. Rev.Stat.Ann. § 47:2110. United relies on cases which hold that a state may waive its eleventh amendment immunity from suit in federal court. *E. g., Parden v. Terminal Reg. of Alabama State Docks Dept.,* 377 U.S. 184, 186, 84 S.Ct. 1207, 1210, 12 L.Ed.2d 233 (1964); *Clark v. Barnard,* 108 U.S. 436, 447, 2 S.Ct. 878, 883, 27 L.Ed. 780 (1883).

■ A state may waive its sovereign immunity from suit, but it may not amend an act of Congress. It is axiomatic that federal courts are courts of limited jurisdiction and that only Congress may retract or expand the limits of federal judicial power.

*See,* U.S.Const. Art. III; *Ex Parte McCardle,* 74 U.S. (7 Wall) 506, 19 L.Ed. 264 (1869). A state may no more authorize federal courts to hear a refund suit which Congress has prohibited, than it may, by waiving its sovereign immunity, also eliminate the requirement in a federal diversity action that the matter in controversy exceed the sum of $10,000.

In a closely analogous situation, the Supreme Court in *Rodgers* dismissed the notion that a state statute could authorize injunctive relief against state taxes if that injunctive relief were otherwise barred by federal law:

> In any case, the [state statute] cannot affect the jurisdiction of federal courts of equity. . . . While local statutes may create new rights, for the protection of which recourse may be had to the remedies afforded by federal courts of equity . . . state legislation cannot enlarge their jurisdiction by the creation of new equitable remedies, nor can it avoid or dispense with the prohibition against the maintenance of any suit in equity in the federal courts, where the legal remedy is adequate.

284 U.S. at 529, 52 S.Ct. at 221. Similarly, we held in *City of Houston, supra,* 347 F.2d at 197–201, that the fact that state taxing authorities declined to object to a federal declaratory judgment proceeding did not remove the jurisdictional bar of section 1341 to such a procedure because the statute acts as "a restraint, not upon the parties, but upon the Court." 347 F.2d at 201.

■ Certainly the Louisiana legislature had no intention of attempting to enlarge federal jurisdiction. The statute provides that refund suits may be maintained in federal courts "in any case where jurisdiction is vested in any of the courts of the United States." La.Rev.Stat.Ann. § 47:2110. By its own terms, the statute is applicable only if federal court jurisdiction is otherwise vested. Whatever the state's intentions, however, its consent to suit in no way affects the jurisdictional bar erected by section 1341.

## IV.

The refund procedure established by section 47:2110 of the Louisiana Code provides taxpayers with a plain, speedy and efficient remedy in the Louisiana courts. The general rule is that the availability of a refund action satisfies section 1341's requirement that an adequate state remedy exists. *E. g., Bland v. McHann, supra,* 463 F.2d at 28; *Charles R. Shepherd, Inc. v. Monaghan,* 256 F.2d 882 (5th Cir. 1958); Wright, Miller & Cooper, 17 Federal Practice and Procedure § 4237 at 423. The Supreme Court specifically declared the Louisiana refund procedure adequate in *Great Lakes Dredge & Dock Co. v. Huffman, supra,* 319 U.S. at 301, 63 S.Ct. at 1074. United is currently embarked upon a pursuit of those remedies. Section 1341 makes that pursuit its exclusive remedy.

Accordingly, the judgment of the district court is

AFFIRMED.