**A BONDING COMPANY, a corporation, Plaintiff–Appellee,**

**v.**

**E. C. SUNNUCK, License Administrator, and Richard Martin, Director of Finance of the City of Birmingham, Defendants–Appellants.**

**No. 78–1243.**

United States Court of Appeals, Fifth Circuit.

Nov. 7, 1980.

---

William C. Walker, Birmingham, Ala., for defendants–appellants.

Benjamin Daniel, Birmingham, Ala., Julian D. Butler, Huntsville, Ala., for plaintiff–appellee.

Before GEE, TJOFLAT and ANDERSON, Circuit Judges.

TJOFLAT, Circuit Judge:

The City of Birmingham, Alabama, levies upon persons engaged in the bail bond business a license tax of one percent of the penal amount of each bond made.[1] A Bonding Company (the Company), a writer of bail bonds, sued the city officials charged with administering this tax in the United States District Court, claiming that the tax provision and its mode of application violat-

---

1. 37 (a) BONDS--APPEARANCE AND APPEAL

. . . . .

There shall also be paid in addition to all the foregoing provisions, by each person engaged in [the business of becoming or procuring surety for appearance in court] a license tax of 1% of the penal amount of each bond made.
Birmingham, Ala., License Code § 37(a) (1974).

ed the Company's fourteenth amendment rights to equal protection and due process. The district court found that it had subject matter jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1343 (1976) and proceeded to find the tax unconstitutional. We vacate the judgment of the district court because the Tax Injunction Act, 28 U.S.C. § 1341 (1976), deprives the court of jurisdiction to entertain this case.

## I

Section 37(e) of the 1974 License Code for the City of Birmingham provides that those serving as surety or procuring surety for appearance of persons in court more than five times yearly are subject to a prima facie presumption that they are engaged in the bail bond business. Many Birmingham criminal defense lawyers issue bail bonds and meet this prima facie test, but the City does not require them to pay the one–percent license tax. The Company, on the other hand, like other bonding companies, is required to pay the license tax each time it issues a bail bond.

In its complaint in the district court, the Company alleged that this unequal enforcement of the license tax places it in a competitive disadvantage vis–a–vis the lawyers and violates its right to the equal protection of the laws. The Company also alleged that the license tax operates to deny it due process of law because the tax is measured by the face amount of each bond, instead of the amount of the premium collected therefor, and, moreover, creates an undue burden on its right to do business. The Company therefore sought an injunction against the collection of the license tax.

The City's tax administrators answered the complaint, denying that the license tax scheme deprived the Company of any constitutional right. The case then proceeded to a trial before the court. At the conclusion of the trial, the defendants for the first time sought dismissal of the suit on the ground that it was barred by the Tax Injunction Act, which provides that:

The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341 (1976). Faced with this jurisdictional barrier, the Company requested, and obtained, leave to amend its complaint to add a prayer for declaratory relief and money damages.

The district court rejected the defendants' attack on the court's subject matter jurisdiction. The court concluded that the Supreme Court's decisions in *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), and *Great Lakes Dredge and Dock Co. v. Huffman*, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943), provided an exception to the Tax Injunction Act for "exceptional cases," record at 40, and considered that this was one of those "exceptional cases." The court found an additional jurisdictional base in 28 U.S.C. § 2283 (1976), which authorizes a federal court to enjoin state court proceedings "where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The district court reasoned that the City's collection of the license tax is the equivalent of a state court proceeding and interferes with the district court's exercise of jurisdiction in criminal cases by impeding its ability to set bail and by imposing a burden on the constitutional right of accused persons to be admitted to bail.

Finally, the district court found that the defendants, in threatening to collect the license tax from the Company, violated the Company's right to due process; at the same time, the court concluded that the evidence failed to support the Company's equal protection claim. On the theory that the Tax Injunction Act does not preclude a claim for damages, the court awarded the Company nominal damages of one cent against the city officials. The court retained jurisdiction of the action for three years in order to assess money damages for any additional injury the Company might suffer through the City's attempt to collect the tax in the future.

## II

Critical implications arise when parties challenge state tax laws in the federal courts. *See Lynch v. Household Finance Corp.*, 405 U.S. 538, 542 n.6, 92 S.Ct. 1113, 1117 n.6, 31 L.Ed.2d 424 (1972). As the Supreme Court has often noted, a federal court order to restrain taxation inevitably interferes with the state's internal economy. *See, e. g., Moe v. Confederated Salish and Kootenai Tribes of the Flathead Reservation*, 425 U.S. 463, 470, 96 S.Ct. 1634, 1640, 48 L.Ed.2d 96 (1976). Such federal interference with the fiscal affairs of a state violates the tenets of the tenth amendment. *See National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245, (1976). Accordingly, equitable principles, principles of federalism, and "recognition of the imperative need of a State to administer its own fiscal operations" require that special restrictions be placed on federal jurisdiction when the validity of a state tax law is challenged. *Tully v. Griffin, Inc.*, 429 U.S. 68, 73, 97 S.Ct. 219, 222, 50 L.Ed.2d 227 (1976).

In *First National Bank v. Board of County Commissioners*, 264 U.S. 450, 44 S.Ct. 385, 68 L.Ed. 784 (1924), the Supreme Court stressed the need for judicial restraint in cases concerning state tax administration when adequate state remedies exist. In *Matthews v. Rodgers*, 284 U.S. 521, 525–26, 52 S.Ct. 217, 219–220, 76 L.Ed. 447 (1932), the Court reconfirmed this policy, stating:

> ... the mere illegality or unconstitutionality of a state ... tax is not itself a ground for equitable relief in the courts of the United States. If the remedy at law is plain, adequate, and complete, the aggrieved party is left to that remedy in the state courts, from which the cause may be brought to this Court for review if any federal question be involved.

Congress codified this practice of judicial restraint in 1937 with the predecessor of 28 U.S.C. § 1341. Act of August 21, 1937, 50 Stat. 738, 28 U.S.C. § 41(1) (1940). Since that time, federal courts have uniformly refused to "enjoin, suspend or restrain the assessment, levy or collection" of a state tax when "a plain, speedy and efficient remedy may be had" in the state courts. 28 U.S.C. § 1341 (1976).

 Since the Company sought injunctive relief against enforcement of the Birmingham bail bond tax, section 1341 required that the district court dismiss the claim for lack of jurisdiction unless the Company could show that it lacked a plain, speedy and efficient remedy in the Alabama courts. The Company did not contend that Alabama remedies are inadequate; nor did the district court find them so.

The city officials, on the other hand, have directed this court to the Alabama provisions for declaratory and injunctive relief. *Ala.Code* §§ 6–6–220 to 232 (1975) (declaratory relief);[2] *Ala.Code* §§ 6–6–500 to 503 (1975) (injunctive relief). "This Court has long recognized that a remedy by injunction in a state court is a plain, speedy, and efficient remedy." *Kiker v. Hefner*, 409 F.2d 1067, 1070 (5th Cir.1969); *Norton v. Cass County*, 115 F.2d 884 (5th Cir.1940). *See 28 East Jackson Enterprises, Inc. v. Cullerton*, 523 F.2d 439, 441 (7th Cir.1975), *cert. denied*, 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed.2d 83 (1976). Absent any indication to the contrary, we must assume that Alabama's equitable remedies are sufficient to protect the Company's federal rights. Thus, unless another exemption to section 1341's jurisdictional bar is available in this case, the case must be dismissed.

---

**2.** Section 223 appears specifically to provide for declaratory relief in state court in cases such as this:

§ 6 6 223. Construction or validity of instruments, statutes, ordinances, contracts or franchises.

Any person interested under a deed, will, written contract or other writings constitut-

ing a contract or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

## III

The district court found three exceptions to section 1341 that would allow it to retain jurisdiction in this case. The court characterized the first of these as "a judicially recognized exception for 'exceptional cases,'" and cited *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), and *Great Lakes Dredge and Dock Co. v. Huffman*, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943), as authority for its existence. Record, vol. 1 at 40.[3] Though the district court did not elaborate further, A Bonding Company, in its brief, cites specific language in these cases which, it claims, provides for the exception. Brief for Appellee at 19–22.[4] We find no indication in either case that the Supreme Court meant to recognize or create a general "exceptional cases" exception to section 1341. *Samuels v. Mackell* did not involve a challenge to a state tax statute, nor did the Court seek to interpret section 1341.[5] *Great Lakes* is more nearly on point; in that case plaintiff sought a declaratory judgment that a state tax provision was unconstitutional. But in finding that declaratory relief should not be granted when adequate state remedies exist, the Supreme Court relied on traditional principles of equity, finding it

unnecessary to inquire whether the words of the statute [28 U.S.C. § 41(1) (1940), which an injunction might be withheld because, despite a plaintiff's strong claim for relief under the established standards, the injunctive remedy seemed particularly intrusive or offensive; in such a situation, a declaratory judgment might be appropriate and might not be contrary to the basic equitable doctrines governing the availability of relief. *Samuels v. Mackell*, 401 U.S. 66, 73, 91 S.Ct. 764, 768, 27 L.Ed.2d 688 (1971).

This Court has recognized that the federal courts, in the exercise of the sound discretion which has traditionally guided courts of equity in granting or withholding the extraordinary relief which they may afford, will not ordinarily restrain state officers from collecting state taxes where state law affords an adequate remedy to the taxpayer. *Matthews v. Rodgers*, 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447. This withholding of extraordinary relief by courts having authority to give it is not a denial of the jurisdiction which Congress has conferred on the federal courts, or of the settled rule that the measure of inadequacy of the plaintiff's legal remedy is the legal remedy afforded by the federal not the State courts.

*Great Lakes Dredge and Dock Co. v. Huffman*, 319 U.S. 293, 297, 63 S.Ct. 1070, 1072-3, 87 L.Ed. 1407 (1943).

For we are of the opinion that those considerations which have led federal courts of equity to refuse to enjoin the collection of state taxes, *save in exceptional cases*, require a like restraint in the use of the declaratory judgment procedure.

*Id.*, 319 U.S. at 299, 63 S.Ct. at 1073, 87 L.Ed. 1407 (emphasis added).

---

3. The court found numerous reasons why this case should be considered exceptional. In essence they included:

(1) The fact situation is similar to that in *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), because as in that case, the state is attempting to tax federal documents. (Apparently the court found bail-bond contracts between bondsmen and federal court defendants to be federal documents.) A state tax on federal documents leads to dangerous conflict between state and federal powers.

(2) A tax based on the penal amount of a bond is an illegal tax on freedom.

(3) The tax interferes with the federal courts' discretion to set the amount of bail of defendants before them.

(4) The section 1341 defense was not raised until after the conclusion of the trial.

(5) It is "crystal clear" that the ordinance is unconstitutional.

(6) The ordinance is more than a taxing ordinance because it attempts to regulate lawyers' bail bond activities.

(7) The ordinance is not authorized by Alabama law.

(8) To fit under this exception to section 1341, the case need not be as exceptional as it would have to be if a law of statewide application, rather than a municipal ordinance, were challenged.

Record, vol. 1 at 37-43.

Since we find no authority for a general "exceptional cases" exception to section 1341, we will not address the validity of these asserted exceptional circumstances.

4. The Company cites the following language in *Samuels* and *Great Lakes* as authority for the "exceptional case" exception:

We do not mean to suggest that a declaratory judgment should never be issued in cases of this type if it has been concluded that injunctive relief would be improper. There may be unusual circumstances in

5. The language appellee cites relates only to the question of whether a federal court should grant declaratory relief to a plaintiff involved in a pending state criminal prosecution when injunctive relief is inappropriate.

the predecessor of 28 U.S.C. § 1341 (1976)] may be so construed as to prohibit a declaration by federal courts concerning the invalidity of a state tax.

319 U.S. at 299, 63 S.Ct. at 1073, 87 L.Ed. 1407. The Court, in stating that judicial restraint in state tax cases was not a denial of jurisdiction or of established rules of equity, referred not to section 1341, but to the court–established equitable doctrine of abstention. Section 1341 generally is held to remove jurisdiction altogether. *See, e. g., Moe v. Confederated Salish and Kootenai Tribes of the Flathead Reservation*, 425 U.S. 463, 470, 96 S.Ct. 1634, 1640, 48 L.Ed.2d 96 (1976); *United Gas Pipe Line Co. v. Whitman*, 595 F.2d 323, 324 (5th Cir. 1979); *Bland v. McHann*, 463 F.2d 21, 24 (5th Cir. 1972), *cert. denied*, 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973). In stating that federal courts of equity have refused "to enjoin the collection of state taxes, *save in exceptional cases,*" 319 U.S. at 299, 63 S.Ct. at 1073, 87 L.Ed. 1407 (emphasis added), we believe that the Supreme Court was referring only to those cases in which the states have failed to provide adequate remedies for the asserted violation of federal rights.

■ In sum, we find no precedent in the Supreme Court jurisprudence for the "exceptional case" rule the district court applied in this case. Nor have we uncovered any case in which the Supreme Court has examined the language of section 1341 or its legislative history for the announced purpose of determining whether its bar to jurisdiction is to be lifted in a case presenting "exceptional" circumstances. We find nothing in the wording of the statute or in the legislative history that would support the district court's interpretation of section 1341 in this case. The statute is direct and clear in its mandate that plaintiffs seeking to enjoin enforcement of state taxes seek their remedies in state courts, when state courts provide appropriate remedies.

### IV

The district court also found jurisdiction under 28 U.S.C. § 2283 (1976), which allows a federal court to grant injunctions to stay proceedings in state court when "necessary in aid of its jurisdiction." Record, vol. 1 at 40. The court noted that the Birmingham one–percent tax applies to bail set in federal court, as well as to bail set in state courts, and that, though the tax is imposed upon the bondsman, it undoubtedly is passed along through increased prices to the defendant seeking bail. In some cases, the court concluded, this additional cost might 'determine whether an accused can muster enough funds to obtain his release. Even if he is able to pay the additional amount, the tax is nonetheless "a tax on his freedom and . . . an effective addition to the amount of bail imposed by [the] court." *Id.* at 41. Based on these observations, the court reasoned that the challenged tax ordinance interferes with the jurisdiction of federal courts to set bail in criminal cases. To protect the courts' future exercise of this jurisdiction, the district judge invoked the authority granted him by section 2283 to "enjoin proceedings in state court," *i. e.*, to enjoin the enforcement of the license tax, "because it is unconstitutional on its face as an intrusion upon the exclusive jurisdiction of this court." *Id.*

■ Section 2283 obviously was not meant to apply to situations such as this. First, there are no state court proceedings to enjoin; the injunction that the district court issued only restrained the city officials from collecting the license tax. Further, the question of whether the tax interferes with the jurisdiction of the federal court to set bail was not properly before the court. The district court was not attempting to set bail in this case, so even if section 2283 were otherwise applicable, the court had no need for it here.

### V

■ Finally, the district court concluded that even if section 1341 precluded injunctive or declaratory relief, it did not affect its jurisdiction to award money damages based on "the unconstitutionality of the ordinance and the tortious nature of its attempted enforcement." Record, vol. 1 at 44. Without deciding whether section 1341

precludes all suits for damages against administrators of state and local taxes,[6] we find that the statute does deprive the district court of jurisdiction in this case.

Section 1341 has been construed to be much broader than its words initially suggest. As we noted in *United Gas Pipe Line Co. v. Whitman*, 595 F.2d 323, 326 (5th Cir. 1979): "The concept that section 1341 is not a narrow statute aimed only at injunctive interference with tax collection, but is rather a broad restriction on federal jurisdiction in suits that impede state tax administration, has continued to gain credence in the federal courts." The purpose of section 1341 is "to protect the integrity of the state treasury . . . ." *Hargrave v. McKinney,* 413 F.2d 320, 326 (5th Cir. 1969). "[T]he history of section 1341, from its precursor federal equity practice to its most current judicial construction, evidences that it is meant to be a broad jurisdictional impediment to federal court interference with the administration of state tax systems." *United Gas,* 595 F.2d at 326.

In *Great Lakes Dredge and Dock Co. v. Huffman,* 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943), the Supreme Court held that the federal courts could not grant declaratory judgment in cases challenging state taxes when the state remedy was plain, adequate and complete. Though the Court in *Great Lakes* refrained from deciding whether the facially narrow language of section 1341 dictated this result, this court held that it did in *City of Houston v. Standard–Triumph Motor Co.,* 347 F.2d 194, 201 (5th Cir. 1965), *cert. denied,* 382 U.S. 974, 86 S.Ct. 539, 15 L.Ed.2d 466 (1966).

More recently, in *Bland v. McHann,* 463 F.2d 21 (5th Cir. 1971), *cert. denied,* 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973), and *United Gas Pipe Line Co. v. Whitman,* 595 F.2d 323 (5th Cir. 1979), this court held that section 1341 deprives the federal courts of jurisdiction to hear state tax refund actions, as well. In *Bland* we stated:

An action for a refund is an integral part of state tax administration. We see no reason to bifurcate the state remedy. Section 1341 compels the taxpayers to seek anticipatory relief through a plain, speedy and efficient state remedy. An ancillary claim for a refund should properly be joined with it.

463 F.2d at 27 (footnote omitted). In discussing *Bland* in *United Gas,* we further observed that "the judicial interpretation and enforcement of state tax law should rest with the state courts alone, . . . a suit for refund is as much an interference with that function as a suit for declaratory or injunctive relief." 595 F.2d at 327.

A federal court suit for damages against a state tax administrator, based on the theory that the administrator tortiously enforced an unconstitutional tax, would have many of the same detrimental effects that actions for tax refund, declaratory, or injunctive relief would have. Although the federal court's decision in such a case technically would bind only the immediate parties, as a practical matter it would undoubtedly dampen future state collection efforts. Once a tax provision has been found invalid, and a state official has been held liable for its application, collecting officials will "doubtless stop asserting rights to taxes under that section, as surely as if collection under it had been formally enjoined." *United Gas,* 595 F.2d at 329–30. As with refund actions, there is no way to predict the full impact of such litigation, but as we held in *United Gas,*

the threat exists that any such litigation could put substantial portions of a state's revenue or broadly applicable sections of a state's tax code in jeopardy. The policy of section 1341 is that such judicial threats should come only from state courts when the state provides taxpayers a remedy that is plain, speedy and effi-

6. We also decline to decide whether federal common law principles prohibit federal courts from taking such suits for damages. *See First National Bank v. Board of County Commissioners,* 264 U.S. 450, 44 S.Ct. 385, 68 L.Ed. 784 (1924) (under principles of federal common law, Supreme Court requires district court to dismiss action for refund of taxes when adequate state remedy exists.)

cient. Review of such state court decisions in the United States Supreme Court remains available to preserve whatever substantial federal rights may be implicated.

595 F.2d at 330.

The district court's award of damages is especially disruptive in this case, since the court expressly reserved jurisdiction to assess further damages in the future should the defendants persist in enforcing the one–percent tax. The effect of this ongoing jurisdiction is virtually the same as that of an injunction. Further, the district court's imposition of one–cent nominal damages indicates that the plaintiff was unable to show real damage at the time of the suit. The claim for damages was plainly an attempt to circumvent the prohibitions of section 1341; it did not change the true nature of the case. *See 28 East Jackson Enterprises, Inc. v. Collector*, 523 F.2d 439, 440–41 n. 2 (7th Cir. 1975), *cert. denied*, 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed.2d 83 (1976). Under such circumstances, section 1341 requires that the district court judgment be vacated and that the case be dismissed.

VACATED and DISMISSED.