John L. DAWSON, Sr., et al., Plaintiffs-Appellees,

v.

John CHILDS, Assessor-Collector of Taxes for Dallas County, Texas, Dallas County, Texas, et al., Defendants-Appellants.

No. 80–1402.

United States Court of Appeals, Fifth Circuit.* Unit A

Jan. 14, 1982.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Henry J. Voegtle, III, Asst. Dist. Atty., Henry Wade, Dist. Atty., Charles Bowling, Jr., Asst. Dist. Atty., Dallas, Tex., *for defendants-appellants.*

John L. Dawson, Sr., pro se.

John L. Dawson, Jr., pro se.

Townes Loring Dawson, Hyattsville, Md., Susan Sleater, Dept. of Justice Civil Div., Washington, D. C., for plaintiffs-appellees.

Before BROWN, WISDOM and RANDALL, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

John L. Dawson, Sr. and John L. Dawson, Jr. brought this action against John Childs, Assessor-Collector of Taxes for Dallas County, Texas and other taxing authorities in Dallas County (hereinafter Dallas) and against the United States. They challenged the assessment and levy of taxes upon certain property they owned and sought to enjoin the enforcement of tax liens upon their property. Second, pursuant to a contract with the United States, they demanded that, if any taxes were due, the United States pay its proper, contractual share. In its original Answer, the United States sought a declaratory judgment that the property was not subject to state or local taxation. 28 U.S.C.A. § 2201.[1]

The Dawsons based jurisdiction upon several federal statutes: 28 U.S.C.A. § 1346(a)(2), the Tucker Act, that deals with claims against the government pursuant to a contract[2]; 28 U.S.C.A. §§ 2409a and 2410, which cover actions to quiet title to property in which the United States has an interest.[3]

The District Court granted summary judgment for the Dawsons and held the lien was invalid. Dallas appealed. We affirm that portion of the opinion which finds the property not subject to taxation while the United States held title but vacate the District Court's judgment insofar as it violated the Tax Injunction Act, 28 U.S.C.A. § 1341.

1. Creation of remedy

In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1954 [26 USCS § 7428], any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

2. United States as defendant

(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

\* \* \* \* \* \*

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

3. § 2409a:

Real property quiet title actions

(a) The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights.

§ 2410:

Actions affecting property on which United States has lien

(a) Under the conditions prescribed in this section and section 1444 of this title [28 USCS § 1444] for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—

(1) to quiet title to,

(2) to foreclose a mortgage or other lien upon,

(3) to partition,

(4) to condemn, or

(5) of interpleader or in the nature of interpleader with respect to,

real or personal property on which the United States has or claims a mortgage or other lien.

*Facts*

During the years 1974 and 1975, the Farmers Home Administration (FHA), an agency of the United States Government, made direct loans on certain parcels of property in the City of Wilmer, Dallas County, Texas. The FHA operated much like a commercial mortgage company. When loans became delinquent, it foreclosed. And so, with regard to the property at issue, it acquired title to the parcels either through foreclosure or by voluntary conveyance in lieu of foreclosure. Usually the property remained in FHA's inventory for a while pending sale.

In 1977, FHA conveyed the parcels, some of which had been in inventory for over two years, to the Dawsons, with the following clause in the deed without warranty:

> *Payment of Taxes.* If the property while in Government inventory is subject to taxation, the taxes will be prorated between the Government and the purchaser as of the date title is conveyed. If the property is not subject to taxation while the Government held it as inventory, the purchaser will pay taxes on the property which became due and payable on or after the date the title of the property is conveyed to the Government.

This clause, in effect, amounted to a contract by which the Government agreed to pay any taxes against the property during the time of its ownership, if the property was subject to Texas local taxes; if not, the Government would have no liability and the Dawsons would be liable only for taxes after they acquired title.

In October 1977, Congress amended the Housing Act of 1949, 42 U.S.C.A. § 1471 *et seq.*, waiving sovereign immunity from taxes on certain property.[4] The amendments applied retroactively to January 1, 1977.

The Dawsons subsequently tendered payment to Dallas for the portion of 1977 when they owned the property. The taxing authorities refused, demanding payment not only for the entire year but for the tax year 1976, when the United States possessed title, as well. The Dawsons then filed suit.

*The Eternal Triangle*

We find it useful to visualize this action as a triangle. Each point of the triangle represents a different party and each side a different claim. The base of the triangle—the bottom line—is the claim by Dallas that the property was not immune from state taxation while the United States held title. The second side represents the claim by the Dawsons against the United States for its share of any taxes due, and the third is their claim against the county seeking to enjoin the tax liens. So viewed, each of the three claims presents a separate and discrete issue.

*Death, Taxes and the Tax Injunction Act*

This Court *sua sponte* requested the parties to discuss whether, under the Tax Injunction Act (the Act), the District Court lacks jurisdiction to hear this case.[5]

---

4. § 1490h provides:

    Taxation of Farmers Home Administration-held property

    All property subject to a lien held by the United States or the title to which is acquired or held by the Secretary under this title other than property used for administrative purposes shall be subject to taxation by a State, Commonwealth, territory, possession, district, and local political subdivisions in the same manner and to the same extent as other property is taxed: *Provided,* That no tax shall be imposed on or collected on or with respect to any instrument if the tax is based on—

    (1) the value of any notes or mortgages or other lien instruments held by or transferred to the Secretary;

    (2) any notes or lien instruments administered under this title which are made, assigned, or held by a person otherwise liable for such tax; or

    (3) the value of any property conveyed or transferred to the Secretary, whether as a tax on the instrument, the privilege of conveying or transferring, or the recordation thereof; nor shall the failure to pay or collect any such tax be a ground for refusal to record or file such instruments, or for failure to impart notice, or prevent the enforcement of its provisions in any State or Federal court.

5. In *Illinois Central Railroad Co. v. Howlett*, 525 F.2d 178 (7th Cir. 1975), *cert. denied sub nom. Scott, Attorney General of Illinois v. Illinois Central Railroad Co.*, 424 U.S. 976, 96

■ Under our federalist system, the state governments no less than the federal government possess certain inalienable powers that the other may not encroach upon. *See generally National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). Of all such areas, the field of state taxation is perhaps the most important. The Supreme Court early recognized the need for judicial restraint in matters involving a state's fiscal affairs. *First National Bank v. Board of County Commissioners,* 264 U.S. 450, 44 S.Ct. 385, 68 L.Ed. 784 (1924). *In Matthews v. Rodgers,* 284 U.S. 521, 525–26, 52 S.Ct. 217, 219–220, 76 L.Ed. 447, 452 (1932), Mr. Justice Stone confirmed this policy, declaring:

> The reason for this guiding principle is of peculiar force in cases where the suit, like the present one, is brought to enjoin the collection of a state tax in courts of a different, though paramount sovereignty. The scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their physical operations, require that such relief should be denied in every case where the asserted federal right may be preserved without it.... [T]his court has uniformly held that the mere illegality or unconstitutionality of a state or municipal tax is not in itself a ground for equitable relief in the courts of the United States. If the remedy at law is plain, adequate and complete, the aggrieved party is left to that remedy in the state courts, from which the cause may be brought to this court for review if any federal questions be involved....

Congress, largely adopting the Court's language, in 1937 codified this judicial policy in the Tax Injunction Act,[6] which states:

### Taxes by States

The District Courts shall not enjoin, suspend, or restrain the assessment, levy or collection of any tax under state law where a plain, speedy and efficient remedy may be had in the courts of such State.

*See* P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, *Hart & Wechsler's The Federal Courts and the Federal System* 978–79 (2d ed. 1973).

This Court frequently has had occasion to discuss the Act. In *Henry v. Metropolitan Dade County,* 329 F.2d 780, 781 (5th Cir. 1964), we explained, "the obligation of the federal court is clear from a reading of the [Act]. The existence of a remedy in the State Court effectively ousts the federal court of jurisdiction...." In *Bland v. McHann,* 463 F.2d 21, 24 (5th Cir. 1972), *cert. denied,* 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973), the late Judge Gewin furnished a detailed and scholarly history of the Act, its intent and effect.

> We are convinced that both long-standing policy and congressional restriction of federal jurisdiction in cases involving state tax administration make it the duty of federal courts to withhold relief when a state legislature has provided an adequate scheme whereby a taxpayer may maintain a suit to challenge a state tax. The taxpayer may assert his federal rights in the state courts and secure a review by the Supreme Court.

Then Judge, now Chief Judge Clark, writing for the Court in *United Gas Pipe Line Co. v. Whitman,* 595 F.2d 323 (5th Cir. 1979), citing *Bland,* held tax refund suits to be within the scope of the Act. Relying upon traditional equity precepts, precedent and the practical effect, he concluded:

> The concept that section 1341 is not a narrow statute aimed only at injunctive interference with tax collection, but is rather a broad restriction on federal jurisdiction in suits that impede state tax administration, has continued to gain credence in the federal courts.

---

S.Ct. 1482, 47 L.Ed.2d 746 (1976), the Court followed such a course, asking the parties to discuss the Tax Injunction Act even though neither they nor the judge had raised the point at trial.

**6.** The Johnson Act, 28 U.S.C.A. § 1342, provides a similar statutory scheme to prevent interference with state administrative agencies or ratemaking bodies regulating public utilities.

595 F.2d at 326. *See also A Bonding Company v. Sunnuck,* 629 F.2d 1127 (5th Cir. 1980); *Ford Motor Credit Co. v. Louisiana Tax Commission,* 440 F.2d 675 (5th Cir. 1971).

■ Although we have come across no case involving application of § 1341 to an action to enjoin a tax lien, we believe it follows naturally from the broad reading of the Act. In dissolving a lien on property, a federal court interferes with the state's fiscal program just as surely as if it enjoined collection or assessment of the tax itself. Indeed, if the lien affords the only means of obtaining tax revenues due, as may often prove the case, the two issues blur into one.

■ The rule, then, is clear: if the Dawsons had an adequate remedy in state court, the District Court lacked jurisdiction in this case as to the state defendants. *See Georgia Railroad & Banking Co. v. Redwine,* 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335 (1952).

We addressed precisely this question in *City of Houston v. Standard Triumph Motor Co.,* 347 F.2d 194 (5th Cir. 1965), *cert. denied,* 382 U.S. 974, 86 S.Ct. 539, 15 L.Ed.2d 466 (1966). Texas, we found, "has a vast arsenal to assure orderly adjudication of the serious federal constitutional question here presented." *Id.* at 199. The Dawsons could bring a declaratory judgment action under the Uniform Declaratory Judgments Act, Tex.Rev.Civ.Stat.Ann. art. 2524–1, or they could seek injunctive relief from illegal tax assessments. They might also pay the disputed tax and then make application to the Tax Collector for refund, pursuant to Tex.Rev.Civ.Stat.Ann. art. 7261. If the Collector refused, they could then bring suit in the Texas courts.

As this menu of remedies offers the Dawsons a wide selection, the requisites of the Act are satisfied. We have no doubt that the Texas courts will hear and rule upon their claim against the tax authorities. Thus we vacate that portion of the District Court's opinion that purported to dissolve the liens upon the Dawsons' property.

*Must We Close Up Shop?*

■ Does our holding that the District Court lacked jurisdiction under the Act require us to vacate the premises, as well? We think not. Referring once again to the triangle, we believe the other two sides properly belong in the federal court. Nothing in the Act suggests, and we do not so read it, that we must refuse to hear claims rightly before us because they are appended to a claim barred by the Act.

■ Dallas would also have us vacate that portion of the District Court's opinion which declares unconstitutional the state taxation of the Government's property. Yet that claim presents a justiciable federal case or controversy. Not since *McCulloch v. Maryland,* 17 U.S. 316, 4 Wheat 316, 4 L.Ed. 579 (1819), a case whose importance Dallas disparages, has anyone doubted that the United States may sue in federal court to enforce its rights. *Department of Employment v. United States,* 385 U.S. 355, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966), flatly states, "we conclude in accord with an unbroken line of authority and convincing evidence of legislative purpose that *section 1341 does not act as a restriction upon suits by the United States* to protect itself and its instrumentalities from unconstitutional state exactions." *Id.* at 358, 87 S.Ct. at 466. *Accord, Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation,* 425 U.S. 463, 470–71, 96 S.Ct. 1634, 1639–40, 48 L.Ed.2d 96 (1976). Although the United States did not bring this suit, we think it reasonable for the Government, which is properly before us because of the Dawsons' good Tucker Act claim, nominally as a defendant-appellee but effectively, vis-a-vis Dallas, as a plaintiff, to assert its argument for a declaratory judgment that the property was not subject to taxation. The federal courts having exclusive jurisdiction of such a claim, we proceed.

Dallas advances a novel argument to justify taxing the United States. Pointing to the Congress' waiver of sovereign immunity from taxation in the 1977 amendments to

the Housing Act,[7] it argues that the waiver supersedes Tex.Rev.Civ.Stat.Ann. art. 7150, section 4's exemption of United States property from Texas taxes.[8] In other words, the congressional amendments do not just open this property to taxation, Dallas explains, they require its taxation. Managing somehow to keep a straight face, it solemnly urges that the waiver in effect *forces* Texas to tax the land, however much it might prefer not to.

We are, it suffices to say, unpersuaded. The amendments themselves are retroactive only to January 1, 1977. Prior to the amendments, there can be no doubt that sovereign immunity shielded the property held by the FHA. Thus we affirm the District Court's ruling that Dallas may not levy taxes on the property for the tax year 1976.

Following the amendments, the property was taxable only if the waiver indeed pre-empted the Texas statutory exemption. Dallas attempts to distinguish between property held by the United States for public purposes and that obtained in satisfaction of a "private" debt. The Texas statute, however, exempts "all property . . . belonging to . . . the United States. . . ." Tex.Rev.Civ.Stat.Ann. Art. 7150, section 4. The statute says *all.* It does not distinguish between different types of property. Adhering to the clear meaning, we affirm the District Court's decision that this property was not subject to taxation by Dallas County and the taxing authorities while the United States held title thereto.

7. See note 4, *supra.*

8. Exemption from taxation

The following property shall be exempt from taxation, to-wit:
4. All property, whether real or personal, belonging exclusively to this State, or any political subdivision thereof, or the United States, except that in each county in this State, where the State of Texas has or may acquire and own land for the purpose of establishing thereon State farms and employing thereon convict labor on State account, the penitentiary board or board of penitentiary commissioners, or other officers of the penitentiary having the management of the same, shall render said land for taxes to the tax assessor of said county and to the tax assessor of each independent school district in which said property, or any part

Our holding that the District Court correctly held this property exempt from taxation prior to purchase by the Dawsons means that we have effectively decided the Dawsons' contractual claim. For if no tax liability accrued, then the contract provides that the Dawsons have no claim against the United States.

AFFIRMED IN PART, VACATED IN PART.

thereof, is located; and the taxes on same shall be assessed and collected in the manner required by law for the assessment and collection of other taxes; provided, that said taxes shall be assessed and collected for county and independent school district purposes only; and said county and independent school district taxes, including all current taxes and all delinquent taxes, shall be paid annually out of the General Revenue Fund of the State. In arriving at the amount to be paid in taxes to the counties the value of the land only shall be considered and not the value of the buildings and other improvements owned by the State and situated on said land. Acts 1907 p. 302; Acts 1910, S.S. p. 122; Acts 1943, 48th Leg. p. 472, ch. 316 § 1; Acts 1945, 49th Leg. p. 470, ch. 298 § 1.