# Young *v.* Pollak & Co.

# Young *v.* Goetter, Weil & Co.

*Actions on Common Counts, for Goods Sold and Delivered.*

1. *When wife may contract, or sue and be sued, as if unmarried; abandonment and non-residence of husband* —At common law, if the husband abandoned his wife, *and* abjured or removed from the State (or resided out of the State), she might engage in trade in her own name, and sue or be sued on her contracts as if sole and unmarried; and under statutory provisions now of force (Code § 2350), if the husband "has abandoned his wife, *or* is a non-resident of the State," she may contract in her own name, and sue or be sued as if sole and unmarried.

2. *Same; when statute takes effect.*—Since the law does not recognize any fractions of a day, but gives effect to a remedial statute from the first moment of the day on which it was approved, the present statute governs all contracts made by a married woman on the day of its approval (February 28th, 1887), whether made before or after its actual approval; while contracts made before that day are governed by common-law principles, as laid down in the cases cited.

3. *Domicil; how acquired or lost.*—A change of domicil is effected by an actual change of residence, made with the intent thereby to acquire a new domicil, either permanently, or of indefinite duration;

and when such act and intent concur, it is immaterial that the purpose was to avoid or escape arrest under a criminal charge in the State from which the party removed.

4. *Argument of counsel to jury.*—Counsel should not be allowed, in their argument to the jury, to state or comment on facts of which there is no evidence before that body; and the court, on objection being made, should check such statements.

APPEAL from the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

These two cases were argued and submitted together, involving the same principles, and depending substantially on the same facts. In each case, the plaintiffs were merchants in the city of Montgomery, suing on the common counts for goods sold and delivered to Mrs. Effie Young, the defendant, who was a married woman. The action by Pollak & Co. was commenced on July 18, 1887, claiming $408.10, for goods sold in December, 1886, and in February and March, 1887; and that of Goetter, Weil & Co. was commenced on the 30th, July, 1887, claiming $602.10 for goods sold during the months of February and March, 1887. In each case, the defendant pleaded the general issue, and a special plea averring her coverture; to which special plea the plaintiffs replied, alleging that her husband had abandoned her, and had removed from the State, and that the defendant, after such abandonment and removal by her husband, carried on business in her own name, and on her own account, as if sole and unmarried. Issues were formed on each of these questions of fact, under the rulings of the court on the pleadings. On the trial, the admitted facts, as reduced to writing and signed by the attorneys of both parties, are thus stated in the bill of exceptions:

"The defendant was married in Heard county, Georgia, in 1875, to W. L. Young; and shortly after said marriage, viz., some time in 1875, they moved to Chambers county, Ala., and there resided together for about one year, when the said W. L. Young, having stolen a horse in Georgia, ran away, and was gone about one year, when he returned to defendant; and shortly afterwards, having stolen another horse in Georgia, he was arrested, and was convicted in Troup county, Ga., of larceny in two cases for stealing said horses, and was sentenced in each case to imprisonment in the penitentiary of Georgia for ten years. After serving more than two years in said penitentiary, said W. L. Young escaped, and came in the Spring of 1881, to Montgomery, Alabama, where his said wife (the defendant) had moved in the mean-

[Young v. Pollak & Co.]

time; and he there obtained employment under an assumed name, and was frequently seen going in and out of her residence for about one month, when two policemen of the city of Montgomery (Payne and Keating), having been directed to look out for him as an escaped convict, arrested him, and delivered him to an officer of the State of Georgia. On the 24th December, 1881, said W. L. Young was granted a free pardon by the Governor of Georgia, and released from the penitentiary; and he then returned to Chambers county, Ala., where he resided until some time in the latter part of 1883, or the early part of 1884, when he came to Montgomery, and remained there for several weeks, at the house of the defendant, when he returned to Chambers county, and resided there most of the time until March, 1886, when he was again in the city of Montgomery, at the house of the defendant, and remained there a short time; and he afterwards lived in Chambers, Shelby, and Lee counties, Alabama, and Heard county, Georgia, until July, 1887, when he was again at the house of the defendant in the city of Montgomery. Said W. L. Young is now a resident of Somerville, Tennessee. At intervals since his said marriage to defendant, he has written to his son, who resided with defendant, and to the defendant also, and especially since his pardon from the penitentiary as aforesaid.

"From about January 1st, 1880, the defendant has carried on, in the city of Montgomery, a small store; her original stock being purchased with money furnished by her father, and given to her by him, and has invested the profits in the support of herself and her son, and in increasing the stock and business. In December, 1886, and up to 17th March, 1887, defendant had in said store a stock of goods worth from three to four thousand dollars, and frequently purchased from Pollak & Co., Goetter, Weil & Co., and others, goods on a credit, and for cash, to be sold, and which were sold, in her said store; and she paid said credit accounts. In February and March, 1887, she purchased goods from Goetter, Weil & Co., to the amount of $592.76, by open account, which remains unpaid, with the interest thereon; all of which goods were purchased on the 28th February, except about $25.00, which was purchased after the 9th of March, 1887. In the latter part of May, 1888, under a bill filed by defendant in the City Court of Montgomery, on the 11th March, 1887, she obtained a divorce from her said husband, on the ground that he had been imprisoned in the

penitentiary of Georgia for more than two years; and she is now a *feme sole*.    From the time of the arrest of said W. L. Young, in 1876, he and the defendant never lived together as husband and wife, except as hereinabove stated, and never cohabited together since said arrest."

In the case of Pollak & Co., as the admitted facts in that case show, the entire account sued on was contracted prior to February 28th, 1887, except an insignificant balance.

On these admitted facts. being all the evidence in the case, the court gave several charges asked in writing by the plaintiff, and refused several charges asked in writing by the defendant.    The second charge given at the instance of the plaintiffs was in these words:    "If the jury believe that W. L. Young, after he came to Alabama, in 1875, or 1876, re- turned to Georgia, to remain permanently, or for an indefi- nite length of time, such return, with the intent as stated, would be an abjuration of the State of Alabama; and if the jury should find, under this charge, that said W. L. Young did abjure the State of Alabama, then, unless they are sat- isfied that, when he came back into Alabama, he came with the intention to remain here permanently, or for an indefi- nite length of time, such abjuration would continue; and if at this time the defendant was living separate and apart from him, and carrying on business in the city of Mont- gomery; and if, during such abjuration by said W. L. Young, and while the defendant was living separate and apart from him, she purchased the goods now sued for, then she would be liable therefor."    The fourth charge given at the instance of the plaintiffs is copied in the opinion of the court, and it is unnecessary to set out the others.

The defendant requested the following (with other) charges, and duly excepted to their refusal:    (1.) "If the jury believe the evidence, Pollak & Co. can not recover any part of their account, except that part which was contracted after the 28th February, 1887, with the interest thereon." (2.) "If the jury believe from the evidence that W. L. Young and the defendant moved to Chambers county, Ala., in 1875, and resided there for about one year, with the in- tention of making that place their home; and that the said W. L. Young, on several occasions since that time, came to defendant's place of residence, and has at intervals, from 1876 to July, 1887, written to her; and if the evidence fur- ther shows that said W. L. Young, for the greater part of the time while the defendant was carrying on business in

the city of Montgomery, was a resident citizen of Alabama; these facts would not show such an abandonment of the defendant by her said husband, as would give her the right to contract, or to sue and be sued alone, and would not entitle the plaintiffs to recover."

"One of the plaintiffs' counsel, in his closing speech to the jury, used this language: 'In 1881, and up to 1883, or 1884, when W. L. Young lived in Chambers county, Ala., he was dodging the officers of the law, for a while in Alabama, and then in Georgia.' The defendant's counsel at once called the attention of the court to this language, and asked the court to instruct the jury that there was no evidence to warrant such assertion by counsel. The court refused to do this, and the defendant excepted."

The errors assigned embrace all the rulings to which exceptions were reserved in each case.

WATTS & SON, for appellant, cited *Walker v. Chapman*, 22 Ala. 116; *May v. Wilkinson*, 27 Ala. 267; *Railroad Co. v. Barclay*, 30 Ala. 120; *Stewart v. James*, 9 Ala. 855; *Krebs v. O'Grady*, 33 Ala. 731; *Thrasher v. Ingram*, 32 Ala. 645; *Parker v. Lambert*, 31 Ala. 91; *Bell v. Bell*, 36 Ala. 466; *Shaw v. Thompson*, 26 Amer. Dec. 655: *Haywood v. Parker*, 36 Amer. Rep. 762; *Carleton v. Rivers*, 54 Ala. 470; *Cross v. State*, 68 Ala. 476; *Wolffe v. Minnis*, 74 Ala. 386; *Railroad Co. v. Bayliss*, 75 Ala. 466; *McAdory v. State*, 62 Ala. 154.

TROY, TOMPKINS & LONDON, and RICE & WILEY, *contra*, cited *Arthur v. Broadnax*, 3 Ala. 537; *James v. Stewart*, 9 Ala. 855; *Mead v. Hughes*, 15 Ala. 141; *Roland v. Logan*, 18 Ala. 312; 1 Bos. & P. 357; *Merrill v. Morrissett*, 76 Ala. 433; *Bragg v. State*, 69 Ala. 204; *Isham v. Gibbons*, 1 Bradf. 69; *Jopp v. Wood*, 4 DeG., J. & S. 616; *Wood v. Fort*, 42 Ala. 641; *DeBonneval v. DeBonneval*, 1 Curt. Ec. 856; 5 Vesey, 750; 1 Wall. C. C. 217; 5 Har. & J. 86, 99, note.

STONE, C. J.—Before the enactment of any of our statutes securing to married women their separate estates, it was settled by several decisions of this court, that if a husband abandon his wife, and abjure or remove from the State (or reside out of the State), and she engage in trade in her own name, her contracts are binding on her, and she

may sue or be sued as a *feme sole.*—*Arthur v. Broadnax*, 3 Ala. 557; *James v. Stewart*, 9 Ala. 855; *Mead v. Hughes*, 15 Ala. 141; *Roland v. Logan*, 18 Ala. 309. We regard this principle as equally a sword and a shield for wives thus circumstanced, and have no wish to disturb or depart from it.

Under the act "to define the rights and liabilities of husband and wife," approved February 28, 1887—Sess. Acts, 80—the wife "may enter into and pursue any lawful trade or business, as if she were sole, . . if [her husband] . . has abandoned his wife, or is a non-resident of the State."—Code of 1886, § 2350. The difference between the two systems is, that under the former rule, both abandonment and abjuration (or non-residence) were necessary to clothe the wife with power to contract and to sue, while under the statute either confers the power and right. Contracts made on and after February 28, 1887, are governed by the statute.— *Wood v. Fort*, 42 Ala. 641. Those entered into before that time, are governed by the rule first above stated.

In the present cases, the questions of abandonment and abjuration, or non-residence, were, each of them, contested. Each of these was a question for the jury, under proper instructions. And the instructions must be construed and interpreted with reference to the testimony before the jury. 3 Brick. Dig. 115, §§ 131 *et seq.* There is nothing in these records tending to show that Young stole the horse in Georgia, before he, "the said W. L. Young, and defendant, viz., sometime in 1875, moved to Chambers county, Alabama." The agreed statement of facts does not tend to prove that the theft preceded the removal.

The fourth charge given at the request of plaintiffs in each of these cases, is in the following language: "If W. L. Young, husband of defendant, removed into the State of Alabama as a place of refuge, or to escape arrest in the State of Georgia, and that was his sole purpose, this would not give him a domicil in Alabama." Change of domicil consists of an act done, with an intent. The act is an actual change of residence. The intent, to effect the change, must be to acquire a new domicil, either permanent in purpose, or of indefinite duration. A temporary habitation, without intent to make it a permanent home, or one of indefinite duration, is not a change of domicil.—*Merrill v. Morrissett*, 76 Ala. 433; 5 Amer. & Eng. Encyc. of Law, 863.

The charge copied hinges the question of Young's change

of domicil on the purpose with which he moved from Georgia to Alabama. Men change their domicils with very varying purposes or motives. The desire to live in a healthier region, to have better social or educational advantages, to enjoy better church privileges, to be near one's relatives, to live in a new and growing country, and sometimes to be relieved of disagreeable surroundings—these and many more may be classed among the purposes—sole purposes, if you please—with which men change their residence. Yet, if the change be in fact made with the intent to acquire a new residence, either permanent, or of indefinite duration, this is a change of domicil. The intent that the new habitation shall, or shall not be permanent, or of indefinite duration, and not the purpose in making the change, is the pivot on which the inquiry turns. The City Court erred in giving this charge.

The second charge at the instance of plaintiffs in each of these cases needs modification. If Young, under the rules declared above, became a resident of Alabama, then his return to Georgia under arrest, or involuntary confinement there, are, of themselves, no evidence of a change of domicil.

In the case of Pollak & Co., the second and third charges asked by defendant were calculated to mislead, and were rightly refused on that account. All the charges asked by defendant in each of the cases were rightly refused.

Counsel for plaintiffs, in each of the cases, was permitted to make statements of facts beyond legitimate bounds. There was no testimoney tending to show that Young was dodging the officers of the law after his re-arrest in the Spring of 1881. These statements of counsel should have been arrested.

The rulings on demurrer are not assigned as error. If they were assigned, the demurrers were properly overruled, under the principles declared above.

Reversed and remanded.