234 So.2d 549

Harvey L. RABREN, etc., et al.

v.

Joseph P. MUDD.

6 Div. 648.

Supreme Court of Alabama.

April 16, 1970.

Sirote, Permutt, Friend & Friedman, and William G. West, Jr., Birmingham, for appellee.

MacDonald Gallion, Atty. Gen., Willard W. Livingston, Asst. Atty. Gen. and Counsel, Dept. of Revenue, and William H. Burton, Asst. Atty. Gen. and Asst. Counsel, Dept. of Revenue, for appellants.

**HARWOOD, Justice.**

In the proceedings below Joseph P. Mudd filed a declaratory proceedings averring that he was a bona fide domiciliary of Delray Beach, Florida, and had been since 8 November 1963, and up to the time of the filing of the bill. He averred that the respondents, as officials of the Revenue Department of the State of Alabama, made a demand on him for copies of his individual Federal income tax returns for the calendar years 1964 through 1967, asserting that he was a domiciliary of Alabama, and as such was required to file individual income tax returns with the Alabama Department of Revenue for those years.

The bill further avers that the respondents would proceed to make a final assessment against him for income tax claimed by the State of Alabama to be due by him for the above mentioned years; that the respondents would proceed to make an illegal assessment against him for income taxes for the above mentioned years unless restrained by the court; that to avoid expensive and lengthy conferences and hearings and court proceedings and to avoid irreparable damage which the complainant might sustain, the bill prayed for a declaratory judgment decreeing that the complainant was a bona fide domiciliary of Florida for the period above mentioned and to the time of the filing of the bill, and that as such non-resident of Alabama, he is not subject to the income tax laws of the State of Alabama.

It is further prayed that the respondents be restrained and enjoined from assessing or attempting to assess from the complainant income taxes under the laws of the State of Alabama for the above mentioned years. The bill further prayed for general relief.

The answer filed by the respondents in general denied the assertions in the bill that the complainant was a bona fide resident for Florida, and further denied that they had informed the complainant that he would have to pay income taxes to the State of Alabama for said years, or that the respondents, at the time of the filing of the bill, have made either a tentative or final assessment of income taxes against the complainant for the years mentioned above. The answer admits that there is a justiciable controversy existing between the complainant and the respondents.

At the hearing below Mr. Mudd testified that he had lived in Birmingham for a long number of years, and had practiced law in that city for some 50 years. He retired from the practice of law in 1963. For some time prior to 1963, he had been negotiating with a prospective purchaser the sale of his stock and the stock owned by other members of his family in the Western Grain Company. This sale was consummated on 29 February 1964, the sale price being over nine million eight hundred thousand dollars for the "Mudd" stock.

Mr. Mudd testified that in November or December 1963, he moved from Birmingham and established his domicil in Delray Beach, Florida.

As tending to show his intention to abandon his Alabama domicil and to acquire a Florida domicil, Mr. Mudd, as complainant, introduced the following evidence:

1. In November 1963, he filed with the proper officials in Florida a sworn declaration to the effect that he was a domiciliary and citizen of Florida, and had no in-

tention of returning to his former domicil. This declaration was in connection with his desire to register to vote in Florida which could not be accomplished until he had been domiciled in Florida for one year. He did later register as a voter in Florida.

2. In 1963, he requested the First Presbyterian Church of Birmingham to transfer his membership to a Presbyterian church in Delray Beach, Florida.

3. In 1963, he had the tax assessor's office in Jefferson County, Alabama, remove the homestead exemption he had theretofore claimed on the home he had occupied in Birmingham.

4. On 3 December 1963, Mr. Mudd wrote the Board of Registrars of Jefferson County requesting that the Board remove his and his wife's name from the list of qualified voters in Jefferson County, Alabama, for the reason that they had recently moved their permanent residence and domicil to Florida.

5. On 31 December 1963, Mr. Mudd opened a bank account in a bank in Delray Beach, Florida, and has continued to use this account to the time of the filing of the suit. He had no active checking account in Birmingham thereafter.

6. In November 1963, Mr. Mudd wrote the Birmingham Country Club requesting that they classify him as a non-resident member as he had moved his residence to Florida.

7. After going to Delray Beach, he joined the Seagate Beach Club in Delray Beach.

8. In December 1963, Mr. Mudd executed a written document conveying to his former associates in their law firm the office furniture, equipment, and good will, reciting in such conveyance that he had retired from the law practice and moved his permanent residence and domicil to Delray Beach, Florida.

9. On 14 March 1964, Mr. Mudd forwarded to the Alabama Department of Revenue, Income Tax Division, his income tax returns for the period 1 January 1963 to 8 November 1963. In the covering letter, with such return, Mr. Mudd stated that he had "taken up permanent residence in Florida and this will be our final income tax return."

10. In March 1964, Mr. Mudd executed before three Florida witnesses in Delray Beach, a last will and testament. In this document he described himself as being a resident of Florida.

11. In February or March 1964, after an examination, Mr. Mudd was issued a Florida driver's license.

12. From 1964 to the time of the hearing, Mr. Mudd filed his Federal income tax returns with the Director of Internal Revenue for Florida, and in such returns listed himself as a resident of Florida.

The evidence further shows that after a short stay at a hotel or motel in Delray Beach, Mr. Mudd rented a furnished home in which he and Mrs. Mudd resided from 1 January to May 1964, but returned to Birmingham in connection with litigation in which he was involved. We note here that Mr. Mudd during the period of time in question, was involved in complex and practically continuous litigation in both State and Federal courts concerning his financial affairs, and matters pertaining to the Western Grain Company. All of these matters related largely to the question of taxes to be paid either the State or the Federal government.

The title to the house in which he and Mrs. Mudd had occupied as their home in Birmingham was in Mrs. Mudd's name. This house has never been sold and Mrs. Mudd conveyed an interest therein to each of their children. The expenses of maintaining the house, such as electric bills, gas

bills, yard maintenance, etc., have been paid by Mr. Mudd. The telephone in the home was not disconnected.

At the times Mr. Mudd would be in Birmingham, he would occupy the house. It also appears that the children of Mr. and Mrs. Mudd, who were non-residents of Birmingham, would also occupy the house from time to time.

The evidence presented by the respondents below was directed largely toward the fact that the home in Birmingham had never been sold after the departure of Mr. and Mrs. Mudd for Florida, but had been maintained for occupancy.

It was also shown that Mr. and Mrs. Mudd had renewed their Alabama driver's licenses first obtained in 1939, during the time they were in Florida and that Mr. Mudd's name appeared on an inner door of an office in his former law firm. However, Mr. Mudd testified he had his name removed on the entrance door of the law offices, and from the directory in the lobby of the building. The office on which his name appeared was one he used when in Birmingham and for which his former associates charged him no rent. He further testified that since 1963, he has received no fees in connection with the legal business done by his former partners or associates, and has done no legal work of any sort in Alabama other than that connected with his personal affairs.

It was also shown that since May 1965, Mr. Mudd has not returned to Florida. Since that time he and Mrs. Mudd have travelled extensively in Europe, have spent some time in North Carolina, and have also been in Birmingham during which time they occupied their former home.

After hearing, the Chancellor entered a decree. He found and decreed that Mr. Mudd was domiciled in Florida, during the period in question; and further that he did not transact any business or professional activity or realize any income within the State of Alabama.

In brief counsel for the appellants state:

"* * * the main issue (if not the sole issue) in this case is the matter of domicile. * . * * Or stated in another way, whether the appellees were domiciliary residents of Alabama, or were they domiciliary residents of the State of Florida, during the calendar years 1964, 1965, 1966, 1967, and until to the trial date in October 1968."

Appellants have made three assignments of error. Assignments 1 and 2 are to the effect that the court erred in decreeing that Mr. Mudd was a domiciliary of Florida during the period in question. Assignment 3 asserts error in the action of the court in decreeing that Mr. Mudd "did not transact any business or professional activity or realize any income within the State of Alabama."

A domicil of one sui generis is in its nature an abstract or metaphysical concept. Clearly there must be physical presence in the chosen place coupled with an intent to make such place one's home. Many factors can enter into determining the intent portion of the definition, and difficulty often arises in the relative importance to be attached to each factor. Emphasis on one or the other factor can produce differing results.

Because it embodies the intent of an individual, an inclusive definition of domicil, workable in every case, has been difficult to construct. In the leading case of Merrill's Heirs v. Morrissett, 76 Ala. 433, domicil is defined as follows:

"The word domicil may be defined to be a residence at a particular place, accompanied by an intention either positive or presumptive, to remain there permanently, or for an indefinite time."

To the same effect see Ex parte Bullen, 236 Ala. 56, 181 So. 498; Ex parte State ex rel. Altman, 237 Ala. 642, 188 So. 685; Mitchell v. Kinney, 242 Ala. 196, 5 So.2d 788.

In order to acquire a domicil of choice there must be an intent to abandon a present domicil with no present intention to return, and the establishment of another place of residence with the intention to remain permanently, or at least, for an unlimited time, and the intent to remain permanently may be inferred from the intent to remain for an unlimited time. It consists of an act done with an intent. Holmes v. Holmes, 212 Ala. 597, 103 So. 884; Allgood v. Williams, 92 Ala. 551, 8 So. 722; Merrill's Heirs v. Morrissett, supra.

When once established, a domicil continues until a new one is acquired. Glover v. Glover, 18 Ala. 367; Daniel v. Hill, 52 Ala. 430; McLeod v. Adams, 218 Ala. 424, 118 So. 636; Mitchell v. Kinney, supra.

Measured by the above governing principles, we think the overwhelming preponderance of the evidence dictated the court's conclusions and decree that Mr. Mudd established his domicil in Florida in the latter part of 1963, and that Florida continued to be his domicil from that time until the time of the hearing below.

Counsel for appellants contend that the papers, documents, and declarations introduced in behalf of Mr. Mudd, are nothing more than self-serving declarations.

Ordinarily a party cannot make evidence for himself by his own declarations unless they constitute part of the res gestae, and such declarations if self-serving are not admissible in evidence. Mallory v. Mallory, 272 Ala. 464, 131 So.2d 703, and cases cited therein.

However, oral or written declarations of a party whose domicil is in question, accompanying an act relative to show domicil, and in explanation of the act, such as the party's declarations on leaving his former domicil, or while journeying to his new abode, or after arriving there, are admissible as res gestae evidence. Such declarations are explanatory of his departure from his old domicil, of his presence in his alleged new domicil; such declarations shed light on his intent both to abandon his old domicil and to acquire a new one. Griffin v. Wall, 32 Ala. 149; Mitchell v. Kinney, supra; Ambrose v. Vandeford, 277 Ala. 66, 167 So.2d 149.

Counsel for appellants further contend that heavy emphasis should be accorded inference that Mr. Mudd's change of domicil was motivated by a desire to avoid payment of income taxes in Alabama.

In Young v. Pollak, 85 Ala. 439, 5 So. 279, the lower court had charged the jury that if Young had removed to Alabama for the purpose of escaping arrest in Georgia, he would not acquire a domicil in Alabama. This charge was held erroneous, as, "men change their domicils with very varying purposes or motives," and if the move he made with the intent that the new habitation be permanent, or of indefinite duration, the motive for the change is not the pivot on which the inquiry turns.

If the evidence going to intent to establish a domicil is more or less balanced pro and con, the motive factor may be considered to the extent it may shed light on the true intent of the person to establish a domicil. See 25 Am.Jur.2d "Domicil," Section 28. It would appear from a reading of the cases that this principle has been largely limited in application to divorce actions where the stay of the complainant in the granting state was only long enough to satisfy the residence requirements required by the granting state.

We are of the conclusion that assignments of error 1 and 2 are without merit. Particularly is this so when it is remembered that this case was heard ore tenus and that there was ample relevant, material, and legal evidence to support the conclusions of the trier of fact.

In support of assignment of error No. 3, counsel for appellants contend that the court erred in decreeing that Mr. Mudd transacted no business and performed no legal services in Alabama after 1963, for which he received compensation, in that the appellants were precluded from going into these matters.

This contention arises from a statement made by the court after sustaining appellee's objection to a question as to whether the price paid for the Western Grain stock was all profit. In explaining his ruling the court stated:

"\* \* \* I thought we had delineated the issues in our pre-trial discussions reasonably so we wouldn't run into this problem. And by way of remainder, I thought that it was considered by us that the pleadings was just a judicial issue of a domicile."

Counsel for appellants then withdrew the question.

The court then pointed out that evidence of the sale of the Western Grain stock had been received in evidence, and that off hand the court could not see that the profits, if any, in the sale of the stock could be material to the issue (of domicil). Counsel for appellants then stated: "I have withdrawn that part relating to any profit or anything."

We assume the court's views were influenced by the provisions of Section 384.5d of the Regulations promulgated by the Alabama Department of Revenue which provide among other things:

"The gain or profit of a non resident from the sale, exchange or other disposition of intangible personal property, including stocks, bonds and other securities, ordinarily is not taxable and should not be included in gross income."

The record further shows, however, that during the cross examination of Mr. Mudd by counsel for the appellants, he was examined extensively as to whether he had performed any legal services, or transacted any business in Alabama after 1963, for which he received any compensation. Mr. Mudd's testimony along this line was that he had not.

At one point during this phase of Mr. Mudd's cross examination counsel for Mr. Mudd observed, "We have no objection to the services Mr. Mudd did in Alabama if it's pertinent." To this the court replied, "Well, I can see how it might be a tie in with the question we are trying to decide in this case. I admit it is tedious, but it does exist. And for this reason I will overrule your objection. Go ahead."

We cannot see that counsel for appellants were precluded from going into the question of whether Mr. Mudd had received any compensation for services or transactions rendered or done in Alabama after 1963. In fact, this issue was thoroughly injected into evidence by the cross examination of Mr. Mudd. No evidence contradicting Mr. Mudd's testimony along this line was presented by the appellants.

█ While there were no allegations in the bill stating that Mr. Mudd had not rendered legal services or engaged in transactions in Alabama after 1963, and had received no compensation from such endeavors, such matters were injected into, and made an issue by the appellants in the hearing. Any possible defect or error in the pleading in this regard was thus cured, the court having jurisdiction of the parties and the subject matter. Turner v. Turner, 261 Ala. 129, 73 So.2d 549.

The court was therefor warranted in considering this aspect of the case, and entering a decree thereon.

We find no merit in assignment of error No. 3.

Affirmed.

LIVINGSTON, C. J., and LAWSON, MERRILL and MADDOX, JJ., concur.