[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1242 
 On Application for Rehearing
The opinion of this court issued June 23, 2006, is withdrawn, and the following is substituted therefor.
This appeal arises from the denial of a tax-refund petition filed by ATT Corporation ("ATT").
During the calendar years 2000, 2001, and 2002, ATT was a New York corporation whose principal place of business was located in Bedminster, New Jersey; ATT did business in the State of Alabama during this period. Alabama levied on ATT both a business privilege tax ("BPT") during this period and a corporate shares tax ("CST") for the calendar years 2000 and 2001.[1] See generally §§ 40-14A-21 to -29 (BPT) and §§ 40-14A-31 to -43 (CST). The BPT was based on the net worth of the corporation, and the CST was based on a "taxable shares base" of the corporation. However, both tax schemes allowed a taxpaying corporation to deduct from its net worth or taxable shares base the book value of an investment in the equity of any other corporation or entity doing businessin the state of Alabama.[2] Consequently, ATT was required to file returns for and pay a BPT pursuant to §40-14A-22, Ala. Code 1975, for the years 2000, 2001, and 2002 and file returns for and pay a CST pursuant to § 40-14A-31, Ala. Code 1975, for the years 2000 and 2001.
ATT deducted only its investments in entities doing business in Alabama from its net worth in the 2000, 2001, and 2002 calendar years, and it paid the required BPT under the statute. However, ATT *Page 1243 
later amended its returns to reflect a deduction from its net worth for all of its investments in other entities, including those entities not doing business in Alabama, and it requested refunds of what ATT alleged were BPT overpayments for the years 2000, 2001, and 2002; ATT's refund requests were denied by the Alabama Department of Revenue.
ATT initially deducted all of its equity investments, including those in entities not doing business in Alabama, from its taxable shares base used to determine its CST during the years 2000 and 2001. After the Department of Revenue audited ATT's CST returns, it entered preliminary assessments stating that ATT owed additional CST based primarily on the Department of Revenue's disallowance of ATT's deductions of its equity investments in entities not doing business in Alabama.
ATT protested the preliminary assessments as to the CST and the denial of its refund requests as to the BPT, and it petitioned the Department of Revenue for a review, stating that the deduction schemes were facially discriminatory and unconstitutional. The Department of Revenue issued a final assessment, which did not address the constitutionality of the BPT and the CST deduction schemes, and it disallowed ATT's deductions of its equity investments in entities not doing business in Alabama and required ATT to pay additional BPT' and CST after reviewing ATT's tax returns and making adjustments.
ATT filed a complaint in the Jefferson Circuit Court, appealing the final assessment, seeking a judgment declaring that the BPT and CST deduction schemes violated the Commerce Clause of the United States Constitution, and requesting a refund of taxes paid, but the circuit court dismissed the complaint without prejudice, based primarily on issues surrounding a supersedeas bond. ATT then paid the additional amounts it was assessed and filed a petition for a refund on the basis that the BPT and CST violated the Commerce Clause of the United States Constitution by allowing a deduction from a corporation's net worth or taxable shares base for investments in the equity of corporations and entities only if they are doing business in Alabama. The Department of Revenue denied those refund requests by letter.
ATT timely appealed the decision denying its refund requests to the Jefferson Circuit Court, again asserting that §§ 40-14A-23(g)(1) and 40-14A-33(b)(2), Ala. Code 1975, facially discriminated against taxpaying corporations that invest in entities not doing business in Alabama in violation of the Commerce Clause of the United States Constitution and requesting a refund of taxes paid. ATT named as appellees G. Thomas Surtees, in his official capacity as commissioner of the Alabama Department of Revenue, and the Department of Revenue (hereinafter referred to collectively as "the Department").
ATT filed a motion for a partial summary judgment, which was denied. The trial court held a bench trial in which the parties stipulated to most of the facts. ATT submitted, and the trial court admitted, into evidence a trial notebook containing, in part: motions, briefs, stipulated facts, supporting precedent, and pleadings. The Department produced testimonial evidence indicating that the purpose of the deduction schemes of the BPT and the CST were to prevent the double taxation of investments in entities doing business in Alabama. *Page 1244 
The trial court entered a final judgment finding that §§40-14A-23(g)(1) and 40-14A-33(b)(2), Ala. Code 1975, "appeared" to be facially discriminatory but did not violate the Commerce Clause of the United States Constitution, that ATT had failed to carry its burden of proof, that in-state economic interests and out-of-state economic interests are treated the same under the BPT and CST deduction schemes, and that the deduction schemes were justified as a means of avoiding double taxation.
ATT filed a timely appeal to this court, contending that the BPT and CST deduction schemes violated the Commerce Clause of the United States Constitution. More specifically, ATT asserts that the deduction schemes facially discriminated against interstate commerce, that the Department had the burden to offer a justification for the discriminatory BPT and CST deduction schemes, and that the Department failed to meet its burden to offer a valid justification for the deduction schemes.
"The Commerce Clause of the United States Constitution states that `[t]he Congress shall have power . . . [t]o regulate commerce . . . among the several states. . . .' U.S. Const., Art. I, § 8, cl. 3." Ex parte Hoover, Inc., [Ms. 1040969, April 28, 2006] ___ So.2d ___, ___ (Ala. 2006). The Commerce Clause has also been interpreted as a limitation on state regulatory powers, rather than solely as an affirmative grant of congressional authority. See Oklahoma Tax Comm'n v. Jefferson Lines,Inc., 514 U.S. 175, 179-80, 115 S.Ct. 1331, 131 L.Ed.2d 261
(1995). The United States Supreme Court has referred to this limitation on state regulatory powers as the "dormant" or "negative" Commerce Clause. "In its negative aspect, the Commerce Clause `prohibits economic protectionism — that is, "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors."'" FultonCorp. v. Faulkner, 516 U.S. 325, 330, 116 S.Ct. 848,133 L.Ed.2d 796 (1996), quoting Associated Ind. of Missouri v.Lohman, 511 U.S. 641, 647, 114 S.Ct. 1815, 128 L.Ed.2d 639
(1994), in turn quoting New Energy Co. of Indiana v.Limbach, 486 U.S. 269, 273-74, 108 S.Ct. 1803,100 L.Ed.2d 302 (1988). "Such burdensome taxes imposed on interstate commerce alone are generally for-bidden: `[A] State may not tax a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State.'" ChemicalWaste Mgmt, Inc. v. Hunt, 504 U.S. 334, 342, 112 S.Ct. 2009,119 L.Ed.2d 121 (1992), quoting Armco, Inc. v. Hardesty,467 U.S. 638, 642, 104 S.Ct. 2620, 81 L.Ed.2d 540 (1984).
As stated above, the BPT is based on the taxpaying corporation's net worth, and § 40-14A-23(g)(1), Ala. Code 1975, allows a corporation to deduct from its net worth "[t] he book value of the investment by the taxpayer in the equity of any other taxpayer . . . that is doing business in Alabama." Similarly, the CST is based on a taxable shares base, and § 40-14A-33(b)(2), Ala. Code 1975, allows a taxpaying corporation to deduct "[t]he book value of the investment by the taxpayer in the equity of any other corporations doing business in Alabama." Both Code sections allow a tax-paying corporation to deduct an investment only if the investment is in the equity of entities doing business in Alabama.
The United States Supreme Court has stated that "[n]o State, consistent with the Commerce Clause, may `impose a tax which discriminates against *Page 1245 
interstate commerce . . . by providing a direct commercial advantage to local business.'" Boston Stock Exch. v. StateTax Comm'n, 429 U.S. 318, 329, 97 S.Ct. 599, 50 L.Ed.2d 514
(1977). "`[D]iscrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." Oregon Waste Sys., Inc. v.Department of Envtl. Quality of Oregon, 511 U.S. 93, 99,114 S.Ct. 1345, 128 L.Ed.2d 13 (1994). In light of the foregoing authority, to determine if a statute is discriminatory on its face, the text of the statute must treat in-state economic interests differently from out-of-state economic interests in such a way as to benefit the in-state economic interests and burden the out-of-state economic interests.
For example, in Chemical Waste Management, Inc. v.Hunt, 504 U.S. at 340-41, 112 S.Ct. 2009, the United States Supreme Court found that an Alabama statute imposing a surcharge on the disposal of hazardous waste from other states was facially discriminatory because it imposed a higher fee on the disposal of out-of-state hazardous waste than on the disposal of in-state hazardous waste. Furthermore, in Fulton Corp. v.Faulkner, 516 U.S. at 333, 116 S.Ct. 848, which is factually similar to the case at hand, the United States Supreme Court found that a statute imposing an "intangibles tax" was facially discriminatory because the amount of the tax was based on the value of corporate stock owned by taxpayer, but it allowed the tax-payer to take a deduction based on the amount of business a company in which the taxpayer had invested did in North Carolina. The United States Supreme Court noted that the petitioner, the Fulton Corporation, was a North Carolina corporation owning stock in six other corporations, but five of those corporations did not do any business in North Carolina. The Fulton Corporation's stock in the five companies that were not doing business in North Carolina, therefore, was subject to an intangibles tax for 100% of the fair market value of that stock; however, the Fulton Corporation was allowed to deduct a portion of the value of the stock in Food Lion, Inc., which did business in North Carolina.
Although the Department contends that §§ 40-14A-23(g)(1) and40-14A-33(b)(2), Ala. Code 1975, are not facially discriminatory, the trial court acknowledged in its final judgment that those statutory provisions "appeared" to be facially discriminatory because they exclude from a taxpaying corporation's net worth or taxable shares base amounts invested in other entities doing business in Alabama yet do not provide for such an exclusion if those other entities in which the taxpaying corporation has invested do not do business in Alabama. Like the intangibles tax scheme in Fulton Corp., Alabama's statutory scheme allows a deduction from the CST and the BPT based on where the entity in which the taxpaying corporation invested does business, i.e., in state or out of state. This differential treatment encourages, to an extent, domestic corporations subject to the BPT and the CST to invest in entities that do business in Alabama, at the expense of entities that do not do business in Alabama. On their face, the statutes at issue impose a heavier tax burden if the entity, in which the taxpaying corporation has invested, does not do business in Alabama. Therefore, §§ 40-14A-23(g)(1) and 40-14A-33(b)(2), Ala. Code 1975, are discriminatory on their face.
In Fulton Corp., 516 U.S. at 331, 116 S.Ct. 848, the United States Supreme *Page 1246 
Court stated that "[s]tate laws discriminating against interstate commerce on their face are `virtually per se invalid.'Oregon Waste [Systems, 511 U.S. 93,] 99 [(1994)]; see also Philadelphia v. New Jersey, 437 U.S. 617, 624
(1978)." A statute imposing a tax that facially discriminates against interstate commerce is unconstitutional unless the state imposing the tax can offer a sufficient justification. SouthCent. Bell Tel. Co. v. Alabama, 526 U.S. 160, 169,119 S.Ct. 1180, 143 L.Ed.2d 258 (1999). Thus, the burden falls on the state to justify a statute that facially discriminates against interstate commerce. See Chemical Waste Mgmt,504 U.S. at 342, 112 S.Ct. 2009, and Hoover, Inc. v. State Dep't ofRevenue, 833 So.2d 32, 36 (Ala. 2002).
In its final judgment, the trial court stated:
 "The court must decide whether ATT has carried its heavy burden of overcoming the presumption that these revenue statutes are constitutional. The party challenging the constitutionality of a statute bears the burden of overcoming the presumption of constitutionality in favor of the statute. Ex Parte State of Alabama, 826 So.2d 178, 185
(Ala.Civ.App. 2002). Here ATT has the burden of proving that the two challenged revenue statutes are discriminatory; that is, that they benefit in-state interest and burden out-of-state interests. Oregon Waste Systems, Inc. v. Department of Environmental Quality, 511 U.S. 93
(1994)."
However, the Alabama Supreme Court has recently described the applicable burden of proof in a case such as this one, stating:
 "The United States Supreme Court has stated that `facial discrimination [on interstate commerce] invokes the strictest scrutiny of any purported legitimate local purpose and of the absence of non-discriminatory alternatives.' Hughes v. Oklahoma, 441 U.S. [322,] 337 [(1979)](emphasis added). The Court has also declared that `[t]his is an extremely difficult burden, "so heavy that `facial discrimination by itself may be a fatal defect.'"' Camps Newfound/Owatonna[, Inc. v. Town of Harrison], 520 U.S. [564,] 582 [(1997)]; see Chemical Waste Mgmt, Inc. v. Hunt, 504 U.S. 334, 342 (1992) (`Once a state tax is found to discriminate against out-of-state commerce, it is typically struck down without further inquiry.')."
Ex parte Hoover, Inc., ___ So.2d at ___.
Since the BPT and the CST deduction schemes were found to facially discriminate against interstate commerce, those provisions were considered "virtually per se invalid," and the Department had the burden of demonstrating their validity. We find that the trial court erred in placing the burden on ATT to overcome the presumption that those revenue statutes were constitutional.
Based on the foregoing, we reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion.
APPLICATION GRANTED; OPINION OF JUNE 23, 2006, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
THOMPSON and BRYAN, JJ., concur.
PITTMAN, J., concurs in the result, without writing.
MURDOCK, J., dissents, without writing.
[1] The CST was repealed for all tax years beginning on or after January 1, 2002, and, therefore, ATT was not required to pay this tax in 2002. See Act No. 2000-705, Ala. Acts 2000, and the Code Commissioner's Notes to § 40-14A-31.
[2] Section 40-14A-22, Ala. Code 1975, levies a privilege tax on corporations and other entities that are doing business in Alabama based on their net worth. Section 40-14A-23, Ala. Code 1975, defines net worth, and subsection (g)(1) of § 40-14A-23
allows a corporation or other entity to subtract the book value of an investment in the equity of any other taxpayer doing business in Alabama from the its net worth.
Section 40-14A-31, Ala. Code 1975, levied a CST on all corporations qualifying or registering to do business or doing business in Alabama in an amount determined by the taxable shares base of the corporation. Section 40 14A-33(b)(2), Ala. Code 1975, allowed corporations paying the CST to deduct from their taxable shares base "[t]he book value of the investment by the taxpayer in the equity of other corporations doing business in Alabama." *Page 1247