[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12124
Non-Argument Calendar
_____

D.C. Docket No. 2:14-cv-00862-WKW-WC

KASWANA A. KELLY,

Plaintiff-Appellant,

versus

ALABAMA DEPARTMENT OF REVENUE,
DAVID BECKLEY,
in individual and official capacity,
EDDIE CROWLEY,
in individual and official capacity,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(January 15, 2016)

Before HULL, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Kaswana Kelly, proceeding pro se, appeals the district court's dismissal of

her complaint for lack of subject matter jurisdiction under the Tax Injunction Act, 28 U.S.C. § 1341.  After careful review of the record and briefs, we affirm.

## I.  BACKGROUND

### A.    Allegations in the Complaint

On August 25, 2014, Plaintiff Kelly filed a pro se amended complaint (the "complaint") against the Alabama Department of Revenue ("ADR"), two ADR employees, David Baxley and Eddie Crumbley, in their individual and official capacities, and other "Unknown Agents" of ADR, also in their individual and official capacities (collectively the "defendants").[1]  Kelly's complaint alleged seven federal claims and three state claims arising from the ADR's assessment and collection of Kelly's 2010 and 2011 Alabama state income tax liability.

Specifically, according to the complaint, Plaintiff Kelly attended college in Alabama, but has lived and worked in Tennessee since 2007.  On July 2, 2014, Kelly's mother received an ADR letter at her Alabama home and that ADR letter stated that Kelly owed $1,707 in Alabama state income taxes for the years 2010 and 2011.  However, Kelly's amended complaint alleges that: (1) she lived and worked in Tennessee during those taxable years; (2) she owed no income tax to the state of Alabama; and (3) it was "not possible for the [ADR] to have any tax

---

[1]Kelly's complaint identified the individual defendants as "David Beckley" and "Eddie Crowley," but the defendants noted in their motion to dismiss her complaint that their correct surnames were Baxley and Crumbley, respectively.

2

records to review" unless they sought such information from the Internal Revenue Service "though illegalities." Despite having access to IRS tax records indicating Kelly was not an Alabama resident, ADR agents "decided to pursue a purely illegal collection action against" Kelly by sending "the first and only collection letter" to the address of Kelly's mother.

On July 10, 2014, Kelly called the ADR to discuss the letter sent to her mother's home. An ADR agent instructed Kelly to provide documentary proof of her Tennessee residency. The next day, Kelly submitted to the ADR her vehicle registration, her Nashville Electric Service seven-year billing history, a current water bill, and a lease from a former apartment. The ADR, however, "[b]latantly ignor[ed] [Kelly's] evidentiary submissions" and placed a tax lien on Kelly's credit report, causing her credit score to drop and "effectively seizing her property." Other than the letter sent to her mother's house, Kelly received no notice from the ADR that it would place a tax lien on her credit report.

Kelly repeatedly called the ADR to ask why it imposed a tax lien, but, at least initially, no ADR agent could answer her questions. Eventually, Defendant David Baxley, an ADR agent, called Kelly and informed her that the ADR had initiated a collections action against her because she still had an Alabama driver's license. Defendant Baxley also told Kelly that the ADR sent her a notice before imposing the tax lien, though the notice was mailed to one of her prior Tennessee

3

addresses.  Kelly later contacted Defendant Eddie Crumbley, the Director of Operations for the ADR's Criminal Division, who stated that he "could not assist in any way regarding the matter" and refused to investigate the situation further. The ADR agents' actions were related to a separate law suit filed by Kelly's fiancé, Samuel Robinson, in the Middle District of Tennessee against Tennessee officials. These Tennessee officials directed ADR's attention to Kelly.

## B.    Federal and State Claims

Construed liberally, Kelly's complaint alleged federal statutory violations, federal constitutional violations pursuant to 42 U.S.C. § 1983, a civil rights conspiracy claim pursuant to 42 U.S.C. § 1985, and various state law claims.  As to all defendants, Kelly's complaint contained three counts—due process, fraud, and intentional infliction of emotional distress.  Specifically, Kelly alleged that the defendants violated her procedural and substantive due process rights (Count I). As to procedural due process, the defendants determined Kelly's state residency and state income tax liability "without affording [her] minimal due process."  As to substantive due process, the ADR initiated "a government action" against Kelly "without legal authority or personal jurisdiction," and Defendants Baxley and Crumbley failed to protect her rights despite their "affirmative duty under the law to uphold the Constitution."  As for her state law claims, Kelly alleged that all the defendants "willfully and intentionally committed fraud" by making false

4

representations regarding her tax liability and the legality of their actions, and that

Defendants Baxley and Crumbly specifically made false representations regarding

their ability to assist her (Count IX).  Kelly alleged that the defendants willfully

and intentionally inflicted emotion distress by "perpetuating an illegal threat

against [her] financial ability to pay" her living expenses (Count X).

In addition, Kelly alleged seven counts against only the ADR and the

"Unknown Agents."  In particular, Kelly alleged that the ADR and the unknown

agents: (1) violated the Privileges and Immunities Clause by imposing Alabama

law on her in a manner dissimilar to other Tennessee residents (Count II); (2)

violated the Fourth Amendment by imposing a tax lien, which prevented her from

transferring property, refinancing her home, or using credit to make purchases

(Count III); (3) violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2, by

imposing a tax lien for which they knew there was no legal basis, fraudulently

reporting the lien to credit reporting agencies, and making a fraudulent

representation as to her tax liability (Count IV); (4) violated the Fair Debt

Collection Practices Act, 15 U.S.C. §§ 1692e and 1692f, by using false information

and threatening to take legal action they could not legally pursue in an attempt to

collect an invalid debt (Count V); (5) conspired to violate her civil rights under

color of state law, in violation of 18 U.S.C. §§ 241 and 242 (Counts VI and VII);

5

and (6) invaded her privacy in violation of the Fourth and Fourteenth Amendments and Alabama tort law (Count VIII).

Kelly sought a preliminary injunction enjoining the ADR from instituting further collection proceedings, a declaratory judgment that the defendants had committed criminal fraud and violated several of Kelly's constitutional rights, and awards of $200,000 in compensatory damages and $750,000 in punitive damages.

## C.    Motion to Dismiss

On October 1, 2014, the defendants filed a motion to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim. The defendants argued, among other things, that the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, and principles of comity barred the district court from exercising subject matter jurisdiction because the relief Kelly requested would "enjoin, suspend, or restrain" the state's ability to assess taxes and Kelly had an adequate state remedy.[2]

A magistrate judge issued an order stating that, after reviewing Kelly's complaint, he "harbor[ed] grave doubts about" subject matter jurisdiction.  To determine whether the TIA barred the exercise of jurisdiction, the magistrate judge directed the defendants to submit for in camera review the ADR's "file concerning

---

[2]The defendants alternatively argued that: (1) the claims against the ADR and the individual defendants in their official capacities are barred by the Eleventh Amendment; (2) the claims against the individual defendants in their individual capacities are barred by qualified immunity; and (3) the complaint failed to plead sufficient facts to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6).

6

its efforts to collect taxes" from Kelly, including any correspondence with Kelly, preliminary and final assessments, documentation as to any levy or lien, and documentation as to any administrative or judicial proceeding.

After an in camera review, the magistrate judge directed that some of the materials be placed in the record under seal and provided to Kelly so she could respond.  These documents included: (1) an August 28, 2013 notice indicating no record of Kelly's 2010 tax return and a balance due of $1,810.18; (2) an October 29, 2013 notice of preliminary assessment; (3) a January 6, 2014 final notice of assessment; (4) a March 18, 2014 notice of intent to offset federal income tax refund; (5) a July 1, 2014 certificate of lien for taxes and taxpayer notice of lien; (6) a July 8, 2014 final notice before seizure; and (7) a June 30, 2014 notice indicating no record of Kelly's 2011 tax return and a balance due of $1,707.68. All of the notices were addressed to Kelly at a Goodlettsville, Tennessee address, except the last notice on June 30, 2014, which was addressed to Kelly at her mother's home in Tuscumbia, Alabama.  Each notice advised Kelly what to do under Alabama law if she disagreed with the notice and/or wanted to appeal the determination.

Kelly responded that she had resided at the Goodlettsville, Tennessee address from 2007 to 2011, but not when the notices were purportedly sent.  Kelly pointed out that the defendants had not submitted evidence that she received any of

the notices prior to July 8, 2014, and asserted without elaboration that the notices were fraudulent. Kelly also questioned how the ADR had determined that she was subject to income tax in Alabama and calculated her tax liability. Kelly contended that the defendants' documents showed that she had no adequate state remedy "since all remedies [had] expired."

## D.    Dismissal of Kelly's Complaint

The magistrate judge issued a report and recommendation ("R&R") recommending that the district court dismiss Kelly's complaint for lack of subject matter jurisdiction under the TIA. The R&R concluded that Kelly's requested relief "would unquestionably 'enjoin, suspend, or restrain' the State's ability to assess its taxes." The R&R further concluded that Kelly had not alleged nor shown: (1) that Alabama's procedures for appealing a final tax assessment or seeking a refund of taxes paid pursuant to an assessment were not a "plain, speedy, and efficient remedy" for contesting taxes; (2) that the ADR failed to comply with Alabama's procedures in assessing Kelly's tax liability and undertaking collection measures; or (3) that Kelly had followed Alabama's procedures in contesting her tax liability.

Over Kelly's objections, the district court adopted the R&R and dismissed her complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure Rule 12(b)(1).

## II.  DISCUSSION

### A.    TIA and Comity

Under the TIA, district courts are prohibited from "enjoin[ing], suspend[ing] or restrain[ing] the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."  28 U.S.C. § 1341.  Rather than confer jurisdiction, the TIA "limits jurisdiction which might otherwise exist," and "was intended to prevent taxpayers from using federal courts to raise questions of state or federal law relating to the validity of particular taxes."  Osceola v. Fla. Dep't of Revenue, 893 F.2d 1231, 1232-33 (11th Cir. 1990).

The TIA bars the exercise of federal jurisdiction if these two requirements are met: (1) the relief requested by the plaintiff would enjoin, suspend, or restrain a state tax assessment, and (2) the state affords the plaintiff a plain, speedy, and efficient remedy.  Williams v. City of Dothan, Ala., 745 F.2d 1406, 1411 (11th Cir. 1984).  The burden is on the plaintiff to show facts sufficient to overcome the TIA's jurisdictional bar.  Amos v. Glynn Cty. Bd. of Tax Assessors, 347 F.3d 1249, 1256 (11th Cir. 2003), abrogated on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 125 S. Ct. 1517 (2005).  In light of the TIA's overarching purpose to impede federal court interference with state tax

9

systems, the Act has been construed broadly.  A Bonding Co. v. Sunnuck, 629 F.2d 1127, 1133 (5th Cir. 1980).[3]

## B.    Type of Relief Requested

Kelly's request for injunctive relief preventing Alabama from assessing taxes against her plainly constitutes relief that would enjoin, suspend, or restrain a tax assessment and thus meets the first requirement of the TIA bar.  See 28 U.S.C. § 1341; Osceola, 893 F.2d at 1233.  The TIA also prohibits declaratory relief. California v. Grace Brethren Church, 457 U.S. 393, 411, 102 S. Ct. 2498, 2509 (1982).

Under our binding precedent, the TIA also bars claims for damages because a monetary award against the state or its tax administrators would have the same detrimental effect on the state as equitable relief, and would dampen state tax collectors.  See A Bonding Co., 629 F.2d at 1132-33 (concluding the TIA deprives district courts of jurisdiction over claims for money damages based on the unconstitutionality of the city tax and the tortious nature of enforcement).  In A Bonding Co., the former Fifth Circuit noted that "[a] federal court suit for damages against a state tax administrator . . . would have many of the same detrimental effects that actions for tax refund, declaratory, or injunctive relief would have.

---

[3]In Bonner v. City of Prichard, this Court adopted as binding precedent the decisions of the former Fifth Circuit handed down on or before September 30, 1981.  Bonner, 661 F.2d 1206, 1209 (11th Cir. 1981).

Although the federal court's decision in such a case technically would bind only the immediate parties, as a practical matter it would undoubtedly dampen future state collection efforts." Id.[4]

While the Supreme Court has declined to address whether the TIA alone acts as a jurisdictional bar to all requests for damages, it has concluded that comity, also referred to as the doctrine of equitable restraint, bars federal-court jurisdiction over a 42 U.S.C. § 1983 action for damages arising from a state tax system. See Fair Assessment in Real Estate Ass'n v. McNary, 454 U.S. 100, 107, 102 S. Ct. 177, 181 (1981) ("Because we decide today that the principle of comity bars federal courts from granting damages relief in such cases, we do not decide whether [the TIA], standing alone, would require such a result."). The Supreme Court explained that a damages award under § 1983 against individual state tax officials would first require a federal-court declaration that those officials, in administering a state tax, violated the plaintiff's constitutional rights. Id. at 113-14, 102 S. Ct. at 184-85. A damages award also would have the practical effect of halting the operation of the state's tax scheme because "such officials, faced with the prospect of personal liability to numerous taxpayers, not to mention the assessment of attorney's fees under 42 U.S.C. § 1988, would promptly cease the

_____

[4]The former Fifth Circuit did stop short of determining whether the TIA precludes all suits for damages against administrators of state and local taxes. See A Bonding Co., 629 F.2d at 1132-33.

11

conduct found to have infringed the petitioners' constitutional rights, whether or not those officials were acting in good faith." Id. at 115, 102 S. Ct. at 185. Thus, taxpayers seeking to challenge the validity of a state tax system under federal law must pursue state remedies to do so, provided that the state remedies are "plain, adequate, and complete." Id. at 116, 102 S. Ct. at 186.

This Court has explicitly relied on both the TIA and comity to conclude that a district court lacked subject matter jurisdiction in a state-tax dispute requesting damages and declaratory relief. See Noble v. Joint City-Cty. Bd. of Tax Assessors of Fulton Cty., 672 F.2d 872, 873-75 (11th Cir. 1982). And in § 1983 actions for damages for alleged constitutional violations, this Court either based its decision solely on principles of comity or determined that the suit was "in essence an action for the refund of taxes." See e.g., Ayers v. Polk Cty., Ga., 697 F.2d 1375, 1376-77 (11th Cir. 1983); Moss v. Georgia, 655 F.2d 668, 669 (5th Cir. Unit B Sept. 11, 1981).

## C.    Alabama's Remedies for Taxpayers

Before the TIA bar applies, however, the state must meet "certain minimal procedural criteria" in providing a "plain, speedy, and efficient" remedy. See Grace Brethren Church, 457 U.S. at 411, 102 S. Ct. at 2509 (quotation marks omitted). In particular, the remedy must provide the taxpayer with a "full hearing and judicial determination at which she may raise any and all constitutional

12

objections to the tax." Id. (quotation marks omitted).  The state remedy, however, need not "be the best remedy available or even equal to or better than the remedy which might be available in the federal courts."  Bland v. McHann, 463 F.2d 21, 29 (5th Cir. 1972).[5]

At the time of Kelly's Alabama tax assessment, state law provided that a taxpayer had the right to appeal a final assessment to either the Administrative Law Division or to the state's circuit courts within 30 days of the final assessment date. See Ala. Code § 40-2A-7(b)(5) (2013).[6]  Because Alabama law allows taxpayers a right to appeal an assessment to the circuit courts within 30 days of the assessment, it provides a plain, speedy, and efficient remedy within the meaning of the TIA. Lasker Boiler & Eng'g Corp. v. Hamm, 328 F.2d 429, 429-30 (5th Cir. 1964).  In Lasker, Alabama's appeals process was deemed sufficient even though the plaintiff's attempt to appeal a tax assessment under state law was dismissed as untimely because the taxpayer appealed on the 31st day.  See id.

In addition, under Alabama law, taxpayers may petition for a refund of taxes paid to the state and may appeal the denial of such petitions and raise federal

---

[5]The Supreme Court has found "no significant difference" between the TIA's requirement for a "plain, speedy and efficient" state remedy and comity's requirement for a "plain, adequate and complete" state remedy.  See McNary, 454 U.S. at 116 n.8, 102 S. Ct. at 186 n.8.

[6]Effective October 1, 2014, after Kelly filed her action in August 2014, the Alabama legislature amended the relevant code provisions to create an Alabama Tax Tribunal to replace the Administrative Law Division in hearing appeals from a final assessment by the ADR.  See 2014 Alabama Laws 378 (Act 2014-146).

constitutional challenges to state taxes in the state courts.  See, e.g., AT&T Corp. v. Surtees, 953 So. 2d 1240, 1243-46 (Ala. Civ. App. 2006) (overturning the trial court's dismissal of the plaintiff's constitutional claims against an Alabama state tax assessment); see also Ala. Code § 40-2A-7(b)(4)-(5).  A state scheme requiring a taxpayer to pay the contested tax and then seek a refund through state administrative and judicial procedures was deemed sufficient by the Supreme Court.  See Roswell v. LaSalle Nat'l Bank, 450 U.S. 503, 522-28, 101 S. Ct. 1221, 1233-37 (1981).

As the district court noted, a taxpayer also may file a declaratory judgment action in state court pursuant to the Alabama Declaratory Judgment Act and the Alabama Administrative Procedure Act.  See Ala. Code §§ 6-6-220-232, 41-22-10; Rabren v. Mudd, 234 So. 2d 549, 285 Ala. 531 (Ala. 1970) (involving taxpayer's declaratory judgment action against the ADR and two agents asserting that the plaintiff was not domiciled in Alabama and thus not required to file an Alabama income tax return); Gibbs v. Cochran, 198 So. 2d 607, 608, 281 Ala. 22, 25 (Ala. 1967) (stating that "controversies touching the legality of acts of public officials or public agencies" are properly brought in declaratory judgment actions).

14

**D.    Dismissal of Kelly's Complaint**

Here, the district court did not err in dismissing Kelly's complaint for lack of subject matter jurisdiction under Rule 12(b)(1).[7]  It was Kelly's burden "to show facts sufficient to overcome" the TIA's jurisdictional bar, which she did not do. See Amos, 347 F.3d at 1256.

First, the relief Kelly's complaint requests would "enjoin, suspend, or restrain" Alabama's income tax assessment.  Id. at 1255.  All of Kelly's claims, against both the ADR and the individual defendants who work there, spring from what she alleges were a wrongful assessment of state income taxes by the ADR and the subsequent failure of the ADR's employees to remedy the error.  The relief Kelly seeks includes enjoining the ADR: (1) from any further collection efforts against her; and (2) from imposing state taxes on people, like Kelly, who have an Alabama driver's license, but live and work in another state.  Kelly also asks for a declaration that, inter alia, the "procedure for tax lien processes in the state of Alabama is unconstitutional."

Granting Kelly the relief she requests would require the district court to interfere with Alabama's tax system, which would contravene the principle underlying both the TIA and comity that federal courts generally should avoid

---

[7]We review de novo a district court's dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  Christian Coal. of Fla., Inc. v. United States, 662 F.3d 1182, 1188 (11th Cir. 2011).

interfering with state taxation schemes.  See Colonial Pipeline Co. v. Collins, 921 F.2d 1237, 1242 (11th Cir. 1991).  Specifically, the plain language of the TIA and this Court's prior holdings clearly prohibit her claims for injunctive and declaratory relief.  Although this Court has not recognized a complete categorical bar to damages claims, Kelly's damages claims based on federal statutory and civil rights violations were correctly dismissed as seeking to restrain or suspend state tax collection.  See McNary, 454 U.S. at 113-16, 102 S. Ct. at 184-86; A Bonding Co., 629 F.2d at 1132-33.

Second, Alabama law provides a "plain, speedy, and efficient remedy" for claims derived from tax-assessment challenges under Alabama Code § 40-2A-7(b)(5).  See Lasker, 328 F.2d at 429-30.  Under that provision, Kelly could have brought her various claims to the then-designated Alabama Law Division or to the circuit courts within the prescribed time frame.  Kelly also could have brought a state court declaratory judgment action under Alabama's Declaratory Judgment Act.  See Rabren, 234 So. 2d at 550-51.  Kelly's argument that a state remedy must be presently available, not expired, is foreclosed by Lasker.  See Lasker, 328 f.2d at 429-30.  Additionally, Kelly's argument that she does not have a remedy available to address her federal claims is without merit.  Alabama state courts provide a venue for bringing federal challenges to state tax assessments.  See AT&T Corp., 953 So. 2d at 1243.  In sum, given that Kelly's action seeks to

16

enjoin, suspend or restrain the assessment of taxes and that Alabama provides Kelly with sufficient state court remedies, the district court lacked subject matter jurisdiction under the TIA and principles of comity.

Finally, because the district court did not have subject matter jurisdiction in this case, it properly declined to exercise supplemental jurisdiction over Kelly's state law claims. See 28 U.S.C. § 1367(c); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, 108 S. Ct. 614, 619 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." (footnote omitted)). Thus, as the district court correctly concluded, Kelly's entire action was due to be dismissed for lack of subject matter jurisdiction.

For all these reasons, we affirm the district court's dismissal of Kelly's complaint for lack of subject matter jurisdiction.

**AFFIRMED.**

17